MICHAEL BRADY, appellant,

*v.*

CARTERET REALTY COMPANY, respondent.

[Submitted July 10th, 1905. Reargued March 27th, 1906. Decided November 19th, 1906.]

1. A defendant in a suit brought under the act to quiet title of real estate (*3 Gen. Stat. p. 3486*) is not entitled, as a constitutional right, to a trial by jury in an action at law, as distinguished from a trial of an issue at law directed by the court of chancery.

2. The refusal of the chancellor to grant a new trial of an issue at law directed by him, under section 5 of the act to quiet title, is an appealable order.

On appeal from an order of the court of chancery refusing a motion to grant a new trial of an issue framed in the supreme court.

*Mr. Ephraim Cutter* and *Mr. Willard P. Voorhees,* for the appellant.

*Messrs. Collins & Corbin,* for the respondent.

The opinion of the court was delivered by

REED, J.

Michael Brady, the appellant, filed a bill against the realty company to have his, complainant's, title determined. The bill sets out the complainant's peaceable possession of the land in question, and sets out that the Carteret Realty Company claims to own the land, and that no suit was pending to enforce or test the validity of such claim.

After issue joined in this suit the chancellor made an order for the framing of an issue in the supreme court, to be tried in the ordinary manner, between the Carteret Realty Company,

as plaintiff, and Brady, as defendant, to determine whether the realty company was entitled to the possession of the tract as against Brady.

The issue so framed was tried and a verdict returned for the realty company. This verdict was certified to the chancellor by the trial justice, with the opinion of the latter magistrate that the verdict was warranted by the evidence.

Brady then moved for a new trial, which motion was heard and afterwards denied by the chancellor. From the order of the chancellor denying this new trial, this appeal is taken.

Two preliminary questions precede the discussion of the action of the court of chancery in refusing the new trial. These questions involve the right of the court of chancery to deal with the verdict at all, for the query is whether the function exercised by the chancellor is not one which belongs alone to the supreme court.

The solution of these questions requires an examination of the legislation under which this proceeding was taken.

This suit was brought under the provisions of "An act to compel the determination of claims to real estate in certain cases and to quiet the title to same." *3 Gen. Stat. p. 3486.*

The first section of this act provides that

"when any person is in possession of lands in this state, claiming to own the same, and his title thereto or to any part thereof is denied or disputed, or any other person claims or is claimed to own the same or any part thereof or any interest therein, or to hold any lien or encumbrance thereon, and no suit shall be pending to enforce or test the validity of such title, claim or encumbrance, it shall be lawful for such person so in possession to bring and maintain a suit in chancery to settle the title of said lands, and to clear up all doubts and disputes concerning same."

The fifth section of the statute provides that

"upon the application of either party an issue at law shall be directed to try the validity of such claim or to settle the facts, or any specified portion of facts upon which the same depends; and the court of chancery shall be bound by the result of such issue, but may, for sufficient reasons, order a new trial thereof, according to the practice in such cases."

The remaining portion of the section provides, in substance, that when the issue is not applied for the court shall proceed to determine such claim according to the practice of that court.

The first question involves an ascertainment of the intent of the legislature in declaring, in the fifth section, that the "court of chancery shall be bound by the result of such verdict"—whether it meant that the verdict, when returned by the jury, should constitute the "result of such issue," or whether it intended that there should be a judgment entered upon the verdict in the supreme court.

The legislative intent seems to be clear that the words "issue at law" mean such an issue as has been always known and employed in the administration of equity jurisprudence. The only additional force to be given to the verdict in this statutory suit is that, so long as it is permitted to stand, the court of chancery is bound by it. It is clear that the trial judge's certificate is to be sent to the chancellor, for, by the terms of the act, he, for sufficient reasons, may grant a new trial, according to the practice in such cases. It would be absurd to suppose that it was the intention of the legislature, in the face of this express power lodged in the court of chancery, that the supreme court should also have the power to review the finding of the jury upon a rule to show cause, or the validity of a judgment entered upon it by a writ of error.

What the legislature intended was that an issue at law should be awarded, and not an action at law directed. In the former the verdict is reported at the court of chancery; in the latter the *postea* goes to the supreme court. The distinction between the two and the practice attending each is well defined. *Trenton Banking Co.* v. *Rossell, 2 N. J. Eq. (1 Gr.) 492; American Dock and Improvement Co.* v. *Trustees for the Support of Public Schools, 37 N. J. Eq. (10 Stew.) 266.*

The answer to the first question is that the statute means, by the use of the words "result of such verdict," the verdict as returned by the jury and certified to the chancellor.

The second question is whether, in view of the constitutional division of judicial powers between the court of chancery and the law courts, the legislature can authorize the chancellor to

set aside or disregard the result of the issue in such case, when there are no equitable considerations involved.

It is, of course, apparent that if the action involves a question which belongs alone to the law courts, it follows that the statute strips the supreme court of a prerogative insured to it by the constitution of 1844, by its language that the several courts of law and equity, except as otherwise provided, shall continue with like powers and jurisdiction as if the constitution had not been adopted.

It cannot be doubted that it is entirely settled in this state that it is beyond the competency of the legislature to confer a purely legal faculty upon the court of chancery or a purely equitable faculty on a court of common law. *Jersey City* v. *Lembeck, 31 N. J. Eq. (4 Stew.) 255, 266.*

So it cannot be doubted that if the question involved in this suit is one purely legal, then the legislature has deprived the supreme court of its constitutional right—or, rather, deprived the citizen of his right to try an issue of this kind in that court—for, although the statute preserves the right of trial by jury, yet so long as the trial and its results are under the exclusive supervision of the court of chancery it is not a trial by law under the rightful control of the supreme court.

The doctrine which underlies the present litigation is as ancient as equity itself. It is a doctrine upon which all suits *quia timet,* including suits to remove clouds from the title of persons in possession, rest. The doctrine is that where there is none, or an inadequate remedy at law for any wrong, equity will furnish a remedy.

The wrong in this class of cases is that there is outstanding an illegal but colorable claim against the complainant, which vexes and harasses him, destroys his credit or depreciates his property. This claim may become the more dangerous by the passage of time, by reason of the loss of testimony, and by the fact that the claim is permitted to remain unchallenged. If the complainant is seemingly or actually the maker of a note, bond, mortgage or deed, which is in fact a nullity, the law provides him no way to bring the matter to a judicial test. So, if he is in possession of land, the title to which is menaced by an out-

standing claim, mortgage, judgment or deed, which is in fact invalid, he is placed at the same disadvantage at law.

Judge Story sums up the equitable doctrine in these words:

"If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it, since he can only retain it for some sinister purpose. If it is a negotiable instrument, it may be used for a fraudulent or improper purpose to the injury of a third person. If it is a deed, purporting to convey lands or other hereditaments, its existence in an uncancelled state necessarily has a tendency to throw a cloud over the title. If it is a mere written agreement, solemn or otherwise, still while it exists, it is always liable to be applied to improper purposes; and it may be vexatiously litigated at a distance of time when the proper evidence to repel the claim may have been lost or obscured; or when the other may be disabled from contesting its validity with as much ability and force as he can contest it at the present moment." *1 Story Eq. Jur.* § *700.*

Mr. Pomeroy remarks:

"If the legal remedies administered by the judicial machinery and methods adopted in law courts are fully adequate to establish, protect and enforce the party's legal estates, interests and rights, a court of equity will not interfere in his behalf with the purely remedial branch of its exclusive jurisdiction; if the legal remedies, either from their own essential nature, or from the imperfection of the legal procedure, are inadequate, then the court of equity will interpose." *Pom. Eq. Jur.* § *220.*

The writer illustrates by reference to the cancellation of instruments, because in such a case, if the present unlawful holder of the instrument—although legal defence in an action by him would be perfect—should transfer the security to a *bona fide* purchaser, the complainant would be without an adequate legal remedy.

· It hardly needs a citation from these recognized authorities to recall the well-known doctrine that in suits of this class jurisdiction rests upon the non-existence of an ' adequate legal remedy by which the rights of the complainant may be properly asserted and protected. Thus, by reason of the inability of a complainant to bring the validity of a note, deed or other instrument to a test in an action at law, a question, otherwise purely legal, becomes cognizable in a court of equity.

The principle is illustrated by the result in the case of *Jersey City* v. *Lembeck, supra,* where a bill to remove and set aside municipal assessments was dismissed because there was a complete remedy by *certiorari.* In *Sheppard* v. *Nixon, 43 N. J. Eq. (16 Stew.) 627,* the bill was dismissed, as a suit under the statute now under consideration, because there was no actual possession by the complainant, and dismissed as a bill *quia timet,* irrespective of the statute, because there was a remedy at law by an action of ejectment.

Bills of peace rest upon the same principle, namely, the inadequacy of an action at law to finally determine title. Indeed, as pointed out by Mr. Spence (*Spence Eq. Jur. p. 691*), originally the court of equity did not scruple to entertain bills concerning legal rights, although there was a remedy at law. The exercise of this jurisdiction was later discontinued. It is true that, as a general rule, a court of equity will not entertain a bill of peace to quiet title until a right to possession has been established in a court of law.

This, however, seems not to have been an infallible rule, for it was held, in *York* v. *Pilkington, 1 Atk. 282,* that when a man had been in possession of a fishery for a long time, he might exhibit a bill to quiet his possession, although he had not established his title.

What the present statute does is to extend the scope of equitable relief by abolishing the necessity of a previous trial at law in cases where the complainant is so placed that he cannot bring such an action. In the present case there was no way by which the complainant could institute a proceeding at law to test the relative rights of the parties to the *locus in quo,* nor any way in law by which he could compel the defendant to do so.

Assuming that the courts of equity would not formerly have granted relief in this specific instance, it is not perceivable how the statute, which merely extends the operation of a well-settled equitable maxim, creates a proceeding which is other than what the statute describes it, namely, an equitable suit; nor is it perceptible in what way the statute strips the courts of law of any of their constitutional functions.

Mr. Justice Field, in delivering the opinion in *Holland* v.

*Challen, 110 U. S. 15,* a case which involves the enforcement of a Nebraska statute to quiet title, observed: "The truth is that the jurisdiction to relieve holders of real property from vexatious claims to it, casting a cloud upon their title and thus disturbing them in its peaceable use and enjoyment, is inherent in a court of equity; and though conditions for its exercise have at different times been prescribed by that court, both in England and this country, they may at any time be changed or dispensed with by the legislature without impairing the general authority of the court." Again, he observes: "It does not follow that by allowing, in the federal courts, a suit for relief under the statute of Nebraska, controversies properly cognizable in a court of law will be drawn into a court of equity. There can be no controversy in a court of law respecting the title or right of possession to real property when neither of the parties is in possession. An action at law, whether in the ancient form of ejectment or in the form now commonly used, will lie only against the party in possession. Should suit be brought in a federal court under the Nebraska statute against the party in possession, there would be force in the objection that a legal controversy was withdrawn from a court of law."

The views thus expressed by Mr. Justice Feld were reviewed and reiterated by him in the subsequent case of *Whitehead* v. *Shattuck, 138 U. S. 146.* In the last case the federal supreme court held that no relief could be afforded under the provisions of an Iowa statute to quiet titles, because in the case then before the court there was an adequate remedy at law.

For the reasons expressed, we are of the opinion that an action provided by our statute is a purely equitable suit, to be conducted according to the practice in our court of chancery.

In respect to the right of trial by jury, it is entirely settled that the right to a jury trial preserved by the constitution does not apply to courts of equity, which, as Chief-Justice Kinsey remarked, in the case of *Wood* v. *Potter, 1 N. J. Law (Coxe) 153, 158,* could always proceed without the intervention of a jury. What the chief-justice meant was that a court of equity always had the right to so proceed. *3 Am. & Eng. Encycl. L. (1st ed.) 722.*

It is true that the courts of equity often send to a jury the determination of perplexing questions of fact, particularly where a question of title of property becomes involved in the administration of some equitable relief. This practice, however, is the creature of the equity judges. If, however, it should be conceded that at the time of the adoption of our constitution the practice to submit to a jury a particular class of questions—as, for instance, the question of title to real estate—had become so inveterate that it could be said that a trial at law had become a right, nevertheless, that fact would not invalidate the provisions of this statute, for it cannot be pretended that there was any practice in the equity courts of England or of this state which conferred the right to a trial by jury in an action at law. The practice was either to direct the trial of an issue or to direct an action at law.

In the old case of *Pomfert* v. *Smith, 4 Bro. P. C. 700,* it was said that courts of equity had adopted the practice, when they saw that the dispute was a mere question of law, of either directing an issue or giving the parties leave, within a limited time, to bring an action at law.

The instances of a trial of legal questions by a jury by means of an issue at law instead of an action at law are numerous. It was the practice adopted in a suit to settle the boundaries between two manors (*Lethieullier* v. *Castlemain, Dick. 46*) ; to try the question whether defendant or plaintiff was heir-at-law (*Newton* v. *Newton, Dick. 443*) ; to determine in whom the right to have a legal estate was vested (*Burkett* v. *Randall, 3 Meriv. 466*).

Such an issue was directed where the crown sought to recover lands alleged to have been reclaimed from the sea and the defendants disputed title to lands between the then present high and low-water mark (*Attorney-General* v. *Chamberlaine, 4 Kay & J. 292*), and where a man set up an exclusive right and those who disputed it were numerous (*Tenham* v. *Herbert, 2 Atk. 483.*

The practice in this state is exhibited by the cases collected in *Stewart's Digest, p. 448,* under the equity head of "Issue at Law."

Inasmuch as the act to quiet title now under discussion confers upon the defendant the privilege of demanding such an issue, his right to a jury trial—conceding that such right exists —is secure. The conclusion is that the statute is in all respects constitutional, and the chancellor, in directing an issue and in reviewing the verdict returned by the jury, was acting within the jurisdiction with which his court is invested.

It is insisted by the respondent that the order of the chancellor refusing a new trial is not an appealable order. We think it is. Such an order was reviewed by the house of lords in *McGregor* v. *Topham, 3 H. L. Cas. 132,* and also in *Boyse* v. *Rossborough, 6 H. L. Cas. 1.*

It was held by this court, in *Newark and New York Railroad Co.* v. *Newark, 23 N. J. Eq. (8 C. E. Gr.) 515,* that an order for an issue was appealable.

The opinion expressed by Judge Whelpley, in *Black* v. *Shreve, 13 N. J. Eq. (2 Beas.) 455, 467,* to the effect that the action of the chancellor respecting an issue and upon the finding of a jury therein was not appealable, was based entirely upon the existence of a discretion in the equity court to regard or disregard the verdict, and upon the fact that the whole object of the issue was to inform the conscience of the court. But under our act to quiet titles an issue must be allowed, and when the verdict is returned it is a final determination of the question submitted, so long as the verdict is permitted to stand. The order refusing to set such a verdict aside is clearly appealable.

In exercising our right to review the grounds upon which the chancellor refused a new trial, it is sufficient to say that our examination has led us to concur in the views expressed by the chancellor in the opinion delivered in the court of chancery, and for the reasons therein given the order is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, PITNEY, REED, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY, DILL—12.

*For reversal*—None.