MARCUS ROBBINS et al.

*v.*

IDEAL WHEEL AND TIRE COMPANY.

[Decided June 2d, 1921.]

1. That instruments of assignment of patents to a corporation, which subsequently became insolvent, were lost is no reason for disallowing the claim of the assignor, to whom stock was issued for such patents, to share in the distribution of the surplus assets.

2. That patents, in consideration of the assignment of which stock in a corporation was issued, were never used by such corporation, is no reason for disallowing the assignor's claim to share in the distribution of surplus assets on insolvency.

3. In the absence of fraud or bad faith, the fact that, by reason of the failure of a corporation to develop patents assigned to it, the stockholders' expectation of profits were blasted, is no ground for rescission of their resolution adopted and confirmed by the board of directors to issue stock in payment for the patents, and, the rights of creditors not being involved, the fact that the patents were not worth as much as the stock, is no ground for rejecting or reducing the assignor's claim to share in the distribution of the surplus assets of the corporation after it became insolvent, the transaction being one of bargain and sale between the assignor and the company.

On appeal from receiver's adjudgment.

*Mr. Benjamin Newman,* for the appellant.

*Messrs. Stein, Stein & Hannoch,* for the respondents.

BACKES, V. C.

The receiver of this insolvent corporation has paid all the debts and the cost of administration, and there is a surplus of assets to be divided among the stockholders. The corporation is a $50,000 concern, of which Joseph H. Dwork, or his assigns, holds one-half the shares. Dwork was the inventor of an automobile tire and obtained letters patent from the United States government for his invention. The company was organized to manufacture and market the tire. Dwork was the promoter and he sold his invention and assigned his patents to the company for his shares—two thousand five hundred. The other stockholders paid cash for their shares. The invention was never utilized by the corporation because, as it is said, of the war embargo upon rubber. The company during its short existence engaged in repairing tires. The stockholders, other than Dwork, protest against his participating in the dividend of the surplus on the grounds that (1) the patents had not in fact been assigned; (2) the patented article was never used by the defendant company; (3) there was no proof of the value of the patents produced before the board of directors, and, consequently, their judgment

of the value was arbitrary, and the issuing of the stock in payment was in violation of the statute and fraudulent. The receiver sustained the protest on the grounds stated and rejected Dwork's claim; hence this appeal.

The proofs show that the patents were assigned. The receiver's findings to the contrary are based upon his assumption that they were not assigned because the instruments of assignment cannot now be found. They are lost. That circumstance manifestly is not a just reason for the disallowance. Nor are his findings that the patented article was never used by the defendant company. That was the company's misfortune.

That, at the time the corporation agreed to issue to Dwork two thousand five hundred shares of its stock in payment for his invention and patents, there was no proof before the board of directors that they were worth that much, and that the board acted arbitrarily, and not in good faith, and that the patents were not in fact of the value of the shares of stock at par, would be good grounds for rejecting the claim or reducing it to the true value of the patents if in the present litigation the rights of creditors were involved, as in *Holcombe et al.* v. *Trenton White City Co.*, *80 N. J. Eq. 122.* Here the contest is between the corporation and its stockholders, or, more closely speaking, between the stockholders and the rigid requirements of the statute, for the protection of creditors, are not applicable; and for this reason: At the first meeting of the stockholders they resolved to purchase the patents and to issue in payment thereof fully-paid-up certificates of stock of the company to the amount of two thousand five hundred shares. The board of directors adopted and confirmed the resolution of the stockholders. The transaction was one of bargain and sale between Dwork and the company. There was no fraud, actual or constructive. Dwork believed he had an invention of great value, which could be profitably exploited by the company, and the stockholders thought so, too. That their hopes and expectations were blasted by the failure to develop the patents and to reap handsome profits in nowise affects the contract of purchase and promise. There is no ground for a rescission, and a rescission could be the only escape from the promise. In disposing of a somewhat

similar question Vice-Chancellor Bergen, in *Goodnow* v. *American Writing Paper Co., 72 N. J. Eq. 645,* quoted the language of Judge Showalter in *Northern Trust Co.* v. *Columbia Straw Paper Co., 75 Fed. Rep. 936,* and it fits the present case: "Whatever may have been in fact the value of the property turned over to the company for its stock, the company agreed to take it for the stock. The persons interested were the stockholders, and there was no dissent on the part of any person concerned from what was then done. Neither any person then holding stock, nor any person who afterwards became a stockholder by assignment from one who then held stock, can now make complaint, on behalf of the corporation, as against the fairness of that transaction. This I take to be the settled law on that subject."

The appeal is sustained and the receiver will take into account the Dwork stock in the distribution.