MACKENZIE OIL COMPANY, a corporation organized and existing under the laws of the State of Delaware,

*vs.*

OMAR OIL & GAS COMPANY, a corporation organized and existing under the laws of the State of Delaware.

### *New Castle, May 2, 1923.*

"Creditors" is a term of broad meaning, and embraces, not alone judgment or lien creditors, but, as well, general or simple contract creditors, or creditors at large, and when used in a statute its ordinary meaning must be given to it, unless something in the nature and purpose of the statute compels a restriction of its definition to a limited class, so that the remedy given by *Revised Code* 1915, § 3883, permitting a creditor of an insolvent corporation to apply for a receiver, permits an application by a simple contract creditor, in view of the fact that the purpose of the statute, not only does not exclude such creditors, but they are the ones who would principally benefit by the remedy provided.

The Court of Chancery is an equity court, under *Constitution, Article* IV, § 10, and *Revised Code* 1915, § 3844, and where a cause is properly within its jurisdiction as a cause in equity, it can determine, without granting a jury trial, the existence of a debt which is denied by defendant, without violating *Conststitution, Article* IV, § 1, providing that the trial by jury shall be as heretofore.

*Revised Code* 1915, § 3883, permitting the Chancellor, on application and for the benefit of any creditor or stockholder, to appoint a receiver for an insolvent corporation, vests such power in the Court of Chancery, in view of the indiscriminate use of the terms "Chancellor" and "Court of Chancery," in *Revised Code* 1915, §§ 3844-3907, so as to be valid under *Constition, Article* IV, § 10, giving the Court of Chancery all the jurisdiction and powers vested by the laws of the State in such court.

In proceedings by complainant, who claims to be a simple contract creditor, for the appointment of a receiver for an insolvent corporation, under *Revised Code* 1915, § 3883, the remedy of defendant, who denies that complainant is a creditor, to avoid answering interrogatories, which complainant is not entitled to have answered unless he establishes himself as a creditor, is by recourse to a plea by which the fact of complainant's status as a creditor can be tried before the interrogatories are answered; but, on the trial of such plea, defendant is not necessarily entitled to have a jury.

*Revised Code* 1915, § 3883, authorizing the appointment of a receiver for an insolvent corporation on behalf of a creditor or stockholder creates a new equitable right, and not merely a new equitable remedy, since it transforms the assets of the corporation into a fund to be held in the nature of a trust for the creditors and stockholders.

Insolvency on the part of a corporation can have no effect in the absence of statute as impressing upon corporate assets a trust which creditors may appeal to equity to take cognizance of and administer for their benefit.

It is competent for the sovereignty which creates a corporation to declare as a law for its life that, if insolvency arises, its assets shall undergo a change of nature, and from being strictly legal in character shall become equitable.

The fact that the Chancellor has discretion to deny the appointment of a receiver for an insolvent corporation, under *Revised Code*, 1915, § 3883, does not defeat the effect of that statute as creating a new equitable right.

Though it is not an inflexible rule that, as to all classes named in a statute, the legislative purpose sought to be served is always to be held to be the same, every intendment favors the idea of unity and constancy of object in the statute.

The right of a creditor, or stockholder, to have the assets of an insolvent corporation taken charge of by a receiver for their benefit, does not in a strict sense create a trust, but creates a right in the nature of a trust.

A suit under *Revised Code* 1915, § 3883, by a creditor to have a receiver appointed for an insolvent corporation, is not a suit in the nature of a creditors' bill, where the remedy in equity is solely in aid of law and for the purpose of supplying its inadequacy, in which cases the aid of equity will not be afforded until the inadequacy of the legal remedy has been demonstrated by judgment, and ordinarily a return of execution unsatisfied, but is one for the benefit of all creditors and stockholders, and even for the benefit of the corporation itself, since the assets may be returned to it, and may be maintained by a simple contract creditor, without first requiring him to reduce his claim to judgment.

Exceptions to Interrogatories.     Complainant's bill seeks the appointment of a receiver for the defendant under the provisions of *Section* 3883 of the *Revised Code of* 1915.     That section provides, as follows:

"Whenever a corporation shall be insolvent, the Chancellor, on the application and for the benefit of any creditor or stockholder thereof, may, at any time, in his discretion, appoint one or more persons to be receivers of and for such corporation, to take charge of the estate, effects, business and affairs thereof, and to collect the outstanding debts, claims, and property due and belonging to the company, with power: *     *     *     Provided, however, that the provisions of this section shall not apply to corporations for public improvement."

The complainant alleges itself to be a creditor of the defendant, in that it is the owner of certain promissory notes made by the defendant, upon which notes, however, it appears that judgment at law has never been secured.

The defendant, by its answer, denies that the complainant is ·

its creditor, admits the execution and delivery of the notes, but
avers them to have been fraudulently secured, and insists upon a
right to a trial before a jury in a law court upon the question of
whether it does in fact owe anything to the complainant upon the
notes in question.

The complainant, after answer, filed substituted interroga-
tories addressed to the defendant and some of its officers, calling
for answers thereto in support of certain allegations of the bill.

Upon the filing of the interrogatories, the defendant excepted
to each and every one of them on the ground that the answer had
denied that the complainant is its creditor, and that it should not,
therefore, be required to disclose the information sought by the in-
terrogatories until after the complainant has established the fact
that it is a creditor of the defendant.

Other exceptions to the interrogatories on the ground of im-
materiality, etc., were also filed. At the hearing upon the excep-
tions, however, the solicitors for the respective parties agreed that
the general exception to all the interrogatories, as above stated,
should be heard and disposed of at the present time, leaving
the particular ones for later consideration. The question now be-
fore the Chancellor is, therefore, as to the sufficiency of the general
exception.

*H. H. Ward*, of the firm of Ward, Gray and Neary, for the
complainant.

*Caleb S. Layton*, of the firm of Marvel, Marvel, Layton and
Hughes, for the defendant.

THE CHANCELLOR. Where a bill is filed by one who des-
scribes himself as a creditor, under *Section* 3883 of the *Revised
Code of* 1915, against an alleged insolvent corporation of this
State, and the answer denies that the complainant is in fact a
creditor, may the Chancellor proceed to hear and determine the
question of the complainant's status as a creditor in accordance
with usual equity procedure, the alleged creditor never having
established his claim by a judgment at law, and the defendant de-
manding a right to a trial by jury?

In *Sill v. Ky. Coal & Timber Development Co.*, 11 *Del. Ch.*
93, 100, 97 *Atl.* 617, which was a bill for a receiver under the section

of the Code above referred to, the Chancellor said that it was not necessary that the complainant be a judgment creditor. The defendant seeks to remove the opinion of the Chancellor in that case as a precedent here by pointing out that in that case the matter was before the court on a motion to dismiss the bill, and, though an answer had been filed, yet the defendant does not appear to have relied in its answer upon its right to a trial before a jury of the question of the complainant's legal status as a creditor. Yet the report discloses that the defendant's motion to dismiss was, among other reasons, based on the ground that the complainant was not a judgment creditor. In effect, therefore, the defendant did rely on its supposed constitutional right to a trial before a jury of the question of whether it owed anything to the complainant because of the alleged claim.

In *Jones v. Mutual Fidelity Co.*, 123 *Fed.* 506 (District Court, District of Delaware), Judge Bradford also concluded that the complainant in a bill filed under the statute here involved need not be a judgment creditor. Again, the defendant seeks to avoid the ruling in that case as an authority because it was upon demurrer, and the defense of a right to require the complainant to first establish his status as a creditor before a jury at law had not been set up by way of answer. The demurrer filed in that case did not urge the nonjudgment character of the complaining creditor as a ground of objection to the bill. But as will appear from page 516 of the report this objection to the bill was made *ore tenus* at the hearing and was treated in the same manner as if formally assigned in the demurrer. In that case there was, therefore, in effect an insistence by the defendant that the complainant was not entitled to proceed with his bill until the existence of his claim was first established at law before a jury. In that case Judge Bradford said:

"The right, subject to the discretion of the Chancellor to resort to and enjoy this equitable statutory remedy, is given to any creditor or stockholder of an insolvent corporation, and, as far as creditors are concerned, does not require that they shall have obtained judgment on their claims, or secured any lien or charge on the corporate assets. 123 *Fed.* 517.

"  *  *  *  Either judgment or nonjudgment creditors, or both, may institute proceedings under the statute." 123 *Fed.* 524.

The word "creditor" is a term of very broad meaning. In

15 *C. J.* 1370, it is so defined as to embrace, not alone judgment or lien creditors, but as well general or simple contract creditors, or creditors at large. When used in the statute here involved, its ordinary meaning must be given to it, unless something inheres in the nature and purpose of the statute which necessarily compels a restriction of its definition to a limited class. In the instant case, the complainant alleges itself to be a simple contract creditor whose claim is evidenced by promissory notes. Though the validity of the notes is disputed, yet if the complainant can establish it by proof, I have no doubt that it is such a creditor as comes within the class intended to be designated by the statute. Instead of finding anything in the statute, its object and purpose, calculated to exclude this sort of creditor from its benefits, I find the contrary to be true. As has often been said, the proceedings under this statute are for the benefit of creditors and stockholders. It is apparent that if a corporation is insolvent, the creditors most in need of the statutory proceeding are those whose claims have not yet been reduced to judgment. Considering real estate assets, judgment or mortgage creditors have a lien. *Section* 3883 affords them, if they be prior, no more effective relief than they already, in its absence, possess. Considering personal assets, judgment creditors may secure a lien by immediately issuing execution if they have not already done so, and the statute can be of no value to them. Of course, if the assets, real and personal, are not sufficient to pay all the judgment or lien creditors, then those who are junior may find a remedy under the statute more advantageous than they can secure at law by way of execution sale, by securing through a receiver a more orderly and beneficial liquidation into cash. If judgment or lien creditors be the only class contemplated by the statute, in many cases it would be difficult to see the purpose which the statute is designed to serve. They have a remedy at law so far, at least, as legal assets are concerned, which is full and adequate except to the extent that forced sales may in certain instances tend to impair it; and as to equitable assets, or assets removed from their reach by obstacles interposed by the debtor, equity, without such a statute as we are now considering, affords them ample remedial procedure. It would, therefore, appear that judgment and lien creditors are those who are least, if at all, in

need of just such a remedy as the statute in question affords. But as to unsecured and nonjudgment creditors, the situation is quite different. In the absence of the statute, they will be required to engage in the race of diligence, a legitimate contest, but one generally unseemly and at times quite inequitable in the distribution of its rewards. And while the race is being run, the assets may be put under the hammer by a judgment or lien creditor at a great and unwarranted sacrifice of values. The assets will have become dissipated. Not only general creditors, but stockholders as well, may suffer serious loss by such an eventuality.

It therefore appears that if the provisions of the statute are to be enjoyed by creditors, that class who are most, if not entirely to be benefited by it, are the creditors who have neither judgment nor lien. This being so, it follows that, instead of finding anything in the statute tending to restrict the meaning of the word "creditor," every consideration would suggest that the term be allowed its full general scope. In New Jersey, where a statutory proceeding for the appointment of a receiver is provided on the application of a "creditor," the term is not restricted in its general meaning, except perhaps to the extent of excluding from its scope one whose claim rests in tort. *Hoopes v. Basic Co.*, 69 *N. J. Eq.* 679, 61 *Atl.* 979.

I am clearly of the opinion that the expressions of opinion to the effect that the words "any creditor" appearing in *Section* 3883 of the *Revised Code* (1915) made by Judge Bradford in *Jones v. Mutual Fidelity Co.*, *supra*, and by Chancellor Curtis in *Sill v. Ky. Coal & Timber Development Co.*, *supra.*, embrace simple contract creditors, are upon every consideration of reason justified.

The statute means, therefore, to give to a nonjudgment creditor the right to initiate the proceedings. But it is insisted that, if it so means, the statute to that extent at least is unconstitutional, in that it deprives the debtor corporation of its right to a trial before a jury of the question of its liability upon a demand which is purely legal. I am unable to accept this contention. The Constitution of this State in *Article* 1, § 4, provides that the "trial by jury shall be as heretofore." This language remains to-day exactly as it appears in all the constitutions of the State since and including the earliest one of 1776.

The Court of Chancery of this State is an equity court. *Constitution, Art.* IV, § 10; *Section* 3844, *Revised Code of* 1915. It will not be contended that, if a cause is properly in a court of equity, a right exists to insist that a fact necessary to be determined in the course of the proceedings, if it may be a subject for cognizance in a law court before a jury, may, for that reason, not also be determined in equity without the intervention of a jury. The Chancellor may seek the judgment of a jury on a question of fact proper to be tried by a jury by framing an issue to be tried at the bar of the Superior Court. This procedure, however, has always been regarded as discretionary. Equity will in certain instances decline to try certain legal questions, such, for example, as title to land. But this refusal, so far as I am able to discover, is based not upon any supposed guarantee of the right to trial by jury. It rests rather on considerations of policy which suggest the legal tribunal as the more convenient one in which to litigate questions of that character. Instances abound in which facts that may constitute a cause of action at law triable before a jury, are nevertheless heard and determined in equity, in whose peculiar procedure a jury has no place. If equity has jurisdiction of the subject-matter, it has always been true that it will proceed to determine all facts necessary to a decree, barring, of course, such exceptional facts as legal titles, which for the reason above suggested it declines to adjudicate. When a fact to be ascertained is whether money is due, and if so how much, equity otherwise having jurisdiction, will not, simply because it has no jury, decline to ascertain the fact that something is due and, if necessary, how much. If the absence of a jury in equity procedure could have the contrary effect, there would be no authority in equity courts to pass upon and allow claims in that class of cases where funds are drawn into equity for administering. In the case of the statute now under discussion, if the fact that a jury had never passed upon the claim of the simple contract creditor who is complainant can be said to stay if not defeat his right to proceed, I can see no reason why the same consideration, so far as right to trial by jury is concerned, would not prevent the court from passing on the claim on final distribution if the proceedings had been initiated by a judgment creditor. Such a result would be clearly contrary

to long established procedure in equity where funds are to be distributed. I take it that no one would venture the opinion that each disputed claim, before it can be approved for payment, must, if the owner of the fund insist, be passed upon by a jury in a law action. Yet I can see no reason why the constitutional guaranty of a jury trial should not prevail in final distribution proceedings if it is to prevail at the inception of the suit.

What has been said with respect to the right to trial by jury has been predicated on the assumption that the Chancellor has jurisdiction of the cause, or subject-matter of the action. Having such jurisdiction, he may proceed to pass on all matters necessary to a determination, notwithstanding that among such matters there may be questions which also in other connections may be heard at law before juries. In such cases, the constitutional provision that trial by jury shall be as heretofore has no pertinency. The most recent application of this principle in this State appears in *Scotten, et al., v. Wright, et al.*, 13 *Del. Ch.* 214, 117 *Atl.* 131, affirmed by the Supreme Court 13 *Del. Ch.* 402, 121 *Atl.* 69, where it was held that the Chancellor, having jurisdiction of the cause, could assess damages for breach of a covenant not to engage in trade.

It remains, then, to determine the question, has the Chancellor jurisdiction to appoint receivers for insolvent corporations on the application of a creditor? The statute (*Section* 3883, *Revised Code of* 1915) gives a plain affirmative answer to this question. If the statute be valid, there can be no doubt of the Chancellor's power. That the statute is valid seems plain. The *Constitution* (*Art.* IV, § 10) provides:

"The Chancellor shall hold the Court of Chancery. This court shall have all the jurisdiction and powers vested by the laws of this State in the Court of Chancery."

Following this constitutional authorization, which appears in the previous constitutions exactly as now, the Legislature enacted the law appearing as *Section* 3883 of the *Revised Code.* This statute plainly confers the jurisdiction in question and traces its sanction to the Constitution, as high a source as that from which the guaranty of trial by jury is derived. The fact that the statute confers the power on "the Chancellor" is of no significance to my mind as indicating an intent to vest authority upon the person

called "Chancellor" as distinguished from conferring jurisdiction upon the Court of Chancery. An examination of *Chapter* 117, *Revised Code of* 1915, which is devoted to the Court of Chancery, will reveal that the statute law of the State in dealing with the subject of the court's powers, indiscriminately confers them in language which refers at times to the "Court of Chancery" and at other times to the "Chancellor." Generally speaking the two expressions may be said for the present purpose to be synonymous. With respect to the statute here involved the practice at the Chancery bar has, so far as I am advised, uniformly been to assert the right and pursue the remedy it affords in accordance with the usual procedure obtaining in equity causes, insofar as the same is appropriate. This practice is in accord with what I conceive to be the meaning of the statute in this regard, viz., that though the power is conferred on "the Chancellor," it nevertheless is meant thereby to be conferred on the court which he holds. The statute, therefore, rests for its support upon the constitutional provision above quoted. Conferring as it does jurisdiction upon the Court of Chancery, which is an equity court, the provision of the Constitution regarding trial by jury is inapplicable. *Brady v. Carteret Realty Co.*, 70 *N. J. Eq.* 748, 64 *Atl.* 1078, 8 *L. R. A.* (*N. S.*) 866, 118 *Am. St. Rep.* 778; *State ex rel. Rhodes v. Saunders*, 66 *N. H.* 39, 25 *Atl.* 588, 18 *L. R. A.* 646.

The defendant makes the point that it ought not to be required to disclose the information sought by the interrgatories until after the complainant has established the fact that it is its creditor. There is force in this contention. For it is conceivable that an alleged creditor might by filing interrogatories indulge in an inquisitiveness concerning the affairs of a corporation defendant much to its injury, and then, after hearing, be found not to be a creditor and therefore never entitled to inquire into the defendant's business. This, however, does not argue that a jury trial should be afforded, for the defendant has ample protection otherwise under Chancery procedure by recourse to a plea by which the fact of the complainant's status as a creditor can be tried. *Hoopes v. Basic Co.*, *supra*. This course, if pursued, will save the defendant in any case from the danger of being harassed or injured in the manner suggested.

Since the argument, a recent case has been decided by the Supreme Court of the United States which the defendant cites in support of its contention here. I refer to the case of *Pusey & Jones Co. v. Hanssen*, 261 *U. S.* 491, 43 *Sup. Ct.* 454, decided April 9, 1923. There is nothing in that decision which deals with the right of the Court of Chancery to entertain jurisdiction of a receivership cause under the statute upon the application of an unsecured simple contract creditor. The question there involved was whether such application could be entertained in a Federal court. It was held that it could not for the reason that the statute created no equitable right—it created only an equitable remedy—and under the rules governing the jurisdiction of Federal courts, such being the nature of the statute, no relief could be afforded. The cited case, therefore, has no application to the question here involved.

Having said this, it is perhaps inappropriate that I make further comment upon that case. The views, however, expressed by the learned justice who spoke for the Court as to the nature of the statute embodied in our *Code*, § 3883, are of such importance to the profession in this State that I feel justified in commenting thereon further than the issue presented by the instant case calls for. I do this for the reason that I find myself in disagreement with the Supreme Court upon the question of the proper interpretation to be given to the statute in question. In saying this, I do so with some diffidence and in all deference to the great respect which the conclusions of that distinguished tribunal uniformly command. I am persuaded that the Delaware statute does something more than to create simply an equitable remedy. It appears to me to be plain that it creates a substantive right of a clearly equitable nature. The right which this statute creates is not, it is true, defined in terms. It is to be gathered, however, from what appears to be the evident and manifest purpose of the statute. That right, I conceive, is that the assets of a corporation upon the event of insolvency may be regarded by creditors and stockholders as impressed with somewhat of the nature of a trust to be administered for their benefit. It is well settled that insolvency on the part of a corporation can have no effect as impressing upon corporate assets a trust which creditors may appeal to equity to take cognizance of and administer for their benefit. *Hollins v. Brierfield*

*Coal & Iron Co.*, 150 *U. S.* 371, 14 *Sup. Ct.* 127, 37 *L. Ed.* 1113. Accordingly, if the statute in question had never been enacted, the suggestion that insolvency converts corporate assets into a *quasi* trust for the benefit of creditors would find no countenance. .

But I take it to be indisputable that it is competent for the sovereignty which creates a corporation to declare as a law for its life that if insolvency arises, thereupon its assets shall undergo a change of nature and instead of being, as theretofore, regarded as strictly legal in character, they shall become equitable in nature. The statute in question seems to me, in effect, to make such a declaration. In principle such statutory declaration is sustainable on the same theory as statutory declarations concerning what shall be deemed to form a cloud on titles, referred to by Mr. Justice Brandeis in his opinion in *Pusey & Jones Co. v. Hanssen*, *supra*.

When insolvency arises, it creates a right on the part of creditors and stockholders to be regarded as bearing a different relationship towards the corporate assets from that which had theretofore existed. The proprietary right over the assets is solely in the corporation acting through its officers; stockholders cannot manage or control the assets; neither can creditors. Nor, in the absence of the statute, can either stockholders or creditors assert any litigable interest in the assets because of insolvency alone. If, therefore, the Legislature in the exercise of competent authority declares that upon the happening of insolvency a different rule shall prevail it must be only because the law-making body conceives that a new status has been created. A right to assert an interest now exists where it did not exist before. The assets, where insolvency arises, may now be taken from the hands of those who theretofore exercised sole dominion over the property and be drawn into equity where a receiver named by the court shall hold and manage them for the benefit of creditors and stockholders. The appointment of the receiver is not the final relief. Such appointment is only ancillary to the primary relief, which is to protect and preserve and ultimately dispose of the corporate assets in harmony with the conception that the statute has conferred upon the classes named a right to have the assets impressed with a beneficial interest common to all.

The fact that there is discretion in the Chancellor to refuse to appoint a receiver (*Jones v. Maxwell Motor Co.*, 13 *Del. Ch.* 76, 115 *Atl.* 312) does not seem to me to destroy the right given by the statute, any more than it could be said that the discretion which equity always exercises in administering the remedy of specific performance strips the right which underlies that remedy of its equitable character.

If the statute had the effect of simply supplying the creditor with a method in equity of collecting his debt, there would be abundant reason to say that only an equitable remedy is created. The statute, however, does not purport to supply to the creditor a remedy in equity simply to collect his debt. Indeed, it does not assure him at all that he may insist upon a sale and distribution and consequent payment. He need not, in fact, prove the amount of his debt in order to secure a receiver. All he must show is that he is a creditor. If the statute supplied only an adjective right, a remedy, to enforce the substantive legal right of payment, this must be so only with respect to creditors. As to stockholders, who equally with creditors may appeal to the statute, certainly it would not be so. It is difficult to discover just what benefit the statute intends to confer upon stockholders unless it be, not only an equitable remedy, but as well a right of a distinctly equitable nature. What legal right of a stockholder can this statute be said to be designed to fortify with an additional equitable remedy? Stockholders' rights in relation to assets are generally, if not almost entirely, assertable in equity. I can think of no substantive legal right of a stockholder of such moment and so frequently arising as to justify the inference that the statute in question was enacted for the purpose of aiding it.

It seems plain, therefore, that as to stockholders, the statute does create an equitable right. From this circumstance, there is strong reason to conclude that creditors, who are linked with stockholders in the contemplation of the statute, like them are intended also to enjoy a right of the same character. In *Pierce v. Old Dominion, &c., Co.*, 67 *N. J. Eq.* 399, 58 *Atl.* 319, the New Jersey statute providing for the appointment of receivers for insolvent corporations was under consideration. That statute could be invoked, like ours, by any creditor or stockholder. Vice Chan-

cellor Stevenson, in speaking of the purpose of the statute and the unity of its character, whether appealed to by creditor or stockholder, said:

> "That the statutory action is not a creditor's suit seems to be indicated very strongly by the fact that a stockholder can institute it. That the statutory action is not a stockholder's suit is indicated with equal plainess, because a creditor may institute it. The object of the statutory action certainly cannot be one thing in case it is instituted by a stockholder and another thing in case it is instituted by a creditor."

And so in the instant case, the object of the statute is the same whether the action is instituted by a creditor or by a stockholder. If as to a stockholder it intends to create a new right cognizable in the Court of Chancery, as to a creditor the intent must be the same. It would not, of course, do to lay it down as an inflexible rule that as to all classes named in a statute the legislative purpose sought to be served is always to be held to be the same. Examples to the contrary can doubtless be found. But where the phraseology is such as is found in the statute here involved, it would seem that this much ought in reason to be true, viz., that every intendment favors the idea of a unity and constancy of object.

The object which the statute has in mind is, as before indicated, to provide by legislative declaration that, upon the happening of insolvency, either of the classes named may have the right to regard the corporate assets as being impressed with a new nature, something in the nature of a trust, and, because of this new nature, ask that the Chancellor take charge of them and manage and administer them for the benefit of all.

This right to have the assets so regarded does not in the strict sense, of course, create a trust. For convenience I speak of it only as in the nature of a trust. Judge Bradford in his opinion in *Jones v. Mutual Fidelity Co., supra,* was, therefore, quite accurate in the strictest sense in saying that a bill similar to this could not be sustained "on the theory of a lien, legal or equitable, or a trust, in favor of the complainants, their claims not having been reduced to judgment and no trust or lien having yet come into existence." It is, nevertheless, a right to have the assets regarded as having undergone, by reason of insolvency, an essential

transformation in character whereby they become impressed with a new nature which theretofore no one had the right to impute to them, and which new nature, in its relationship to those interested, is special to none but of general interest to all. In this respect it is somewhat similar in principle to the transformation that takes place in the legal character of assets when a debtor makes an assignment for the benefit of creditors. In such case it seems to be settled that any creditor, whether a judgment or secured creditor, or not, may maintain a bill to administer the fund. *Day, et al., v. Washburn, et al.*, 24 *How.* 352, 16 *L. Ed.* 712.

If I have correctly described the true meaning of the statute, then it is apparent that this case is not to be assimilated to that class of cases which form one type of creditors' bills, where the remedy in equity is solely in aid of law and for the purpose of supplying its inadequacy. In such cases, it is very clear that the aid of equity should not be afforded until the inadequacy of the legal remedy has been demonstrated by judgment, and ordinarily a return of execution unsatisfied. The difference between that sort of case and this is, that there the creditor is seeking payment, and he generally asks that his judgment be declared a lien on assets equitably belonging to the defendant. He may also in proper cases secure the benefit of his discovery of assets by being given a preference. But here the creditor is not seeking payment of his debt. The proceeding, to be sure, may itself yield him payment in the end, or, if not, place the corporate affairs in such situation that if the receiver be discharged and the assets returned to the corporation, he will be able to be paid. In no event, however, will the complaining creditor secure a preference. What the statute affords to him is the right to have the assets considered, upon insolvency, as equitably belonging to everybody in interest, not alone to the creditors and stockholders, but even to the fictitious person known as the corporation, and held and administered for the benefit of all.

In the opinion filed in *Pusey & Jones v. Hanssen, supra,* the learned Justice who spoke for the majority of the court said:

"The only substantive right to a simple contract creditor is to have his debt paid in due course. His adjective right is, ordinarily, at law. He has no right whatsoever in equity until he has exhausted his legal remedy."

This statement of the law may be conceded to be generally true; but it is not always so. Where the facts are such as to raise an equity of which a Court of Chancery may take cognizance, then the simple contract debtor may, notwithstanding he has never pursued his remedy at law, maintain a bill in equity for appropriate relief, and this notwithstanding the ultimate object he seeks is to secure final enjoyment of his substantive right of payment. The case above cited from 24 *Howard* contains the following language, which supports this statement:

"In the present case, as the assignment was made to Keith in trust for the benefit of creditors, if the bill had been filed to enforce the trust, no judgment or execution would have been necessary, as preliminary steps to the interposition of the court."

In that event, the assignment would supply the equity upon which the jurisdiction would rest, and the proceedings, notwithstanding they looked forward to payment of the creditor's debt, would not be regarded as in aid of law. Hence the creditor need not, as a preliminary to his coming into equity, have obtained judgment and· issued execution.

So, likewise, in the case of a deceased debtor, an unsecured contract creditor may maintain a bill against the executor and devisees for discovery of assets and account and "will not be turned back to a court of law to establish the validity of his claim." *Kennedy v. Creswell*, 101 *U. S.* 641, 25 *L. Ed.* 1075. Here, again, the creditor relies on an equity distinct from any conception of appealing to the court in aid of his legal remedies, and this notwithstanding his purpose is manifestly the ultimate one of making good his legal demand.

It seems to me that the cases presented by the statute in question are more to be assimilated in principle to cases of this character, rather than to cases presented by creditors' bills which seek the aid of equity to meet the inadequacy of a remedy at law. In the cases cited, the assignment in the one and the discovery and account in the other supply the ground of jurisdiction. No· judgment at law is necessary as a prerequisite to its exercise. Here the statute stands on the same footing for jurisdictional purposes as the assignment, and the accounting and discovery, in the illustrations referred to. And the case here appears to be stronger,

for the ultimate object here is not necessarily payment of the debt. Payment may never result from the proceedings. Moreover, as before indicated, the right created by the statute is not special to any one creditor; it is for the benefit of all creditors, and as well for the stockholders, and, in view of the fact that the assets may be turned back to the corporation, can be said to contemplate also its benefit.

For the reasons above indicated, I find myself in disagreement with the interpretation of the Delaware statute given to it by the majority of the Supreme Court in the *Pusey & Jones Case.*

An order will be entered overruling the general exceptions to the interrogatories.