WILLIAM H. WEST and MABEL PHELPS LAWTON, Executrix of the Last Will and Testament of William M. Lawton, Deceased,

*vs.*

SIRIAN LAMP COMPANY a corporation of the State of Delaware, H. & B. SECURITIES CORPORATION, CHESTER H. BRASELTON, DONALD R. MCLENNAN, WILLIAM G. URMSON, ADAM HAMIN, and CLEMENT ORVILLE MINIGER.

*New Castle, May 29, 1944.*

*Hugh M. Morris* and *Alexander L. Nichols,* of Morris, Steel & Nichols, for complainants.

*Howard Duane, Harry Rubenstein,* and *Warren Roberts,* (William Bohleber and William Helfer, both of New York City, of counsel), for appearing defendants.

HARRINGTON, Chancellor: This is a class bill filed by preferred stockholders on behalf of Sirian Lamp Company, one of the defendants, seeking to have this court cancel the whole of the no par common stock issue of that corporation, consisting of 300,000 shares.

The bill alleges:

(1) That the Sirian Lamp Company was organized in May of 1922 under the name of Universal Lamp and Wire Company. Article IV of its original certificate of incorporation provided:

"The total authorized capital stock of this corporation is Five Hundred Thousand Dollars ($500,000.) divided into five thousand (5000) shares of the par value of One Hundred ($100.) Dollars each of non-voting, preferred stock and thirty thousand (30,000) shares of Common or voting stock of.no par value. The Common stock is to be fully paid and non-assessable and is the only stock having any voting power or rights."

(2) That when the corporation was organized, *paragraph 4 of Section 5 of the General Corporation Law, Rev. Code 1915, § 1919, subd. 4, as amended by Volume 29 Laws of Delaware, Chapter 113, § 5,* provided:

"The amount of the total authorized capital stock of the corporation, which shall not be less than two thousand dollars, the number of shares into which the same is divided and the par value of each share; the amount of capital stock with which it will commence business, which shall not be less than one thousand dollars; in the case of a corporation without nominal or par value to its stock or any class thereof, the Certificate of Incorporation, with respect to such stock, in lieu of the above shall state the total number of shares authorized and that they are without nominal or par value, and the number of shares with which it will commence business, which shall not be less than ten shares; and if there be more than one class of stock created by the certificate of incorporation, a description of the different classes with the terms on which the respective classes of stock are created. Provided, however, that the provisions of this paragraph shall not apply to corporations not for profit, for which it is desired to have no capital stock; in case any such corporation desires to have no capital stock it shall be so stated, and the conditions of membership shall be also stated."

(3) That immediately after the organization of the corporation in 1922, 115 shares of preferred stock and 30,000 shares of purported no par common stock were issued.

(4) That in February of 1923, the name of the corporation was changed from Universal Lamp and Wire Company to Sirian Lamp Company; at the same time Article IV, of the original certificate of incorporation was stricken out, and the following article substituted therefor:

"Article Fourth: The total authorized capital stock of this cor-

poration is twenty thousand (20,000) shares of preferred stock of the par value of One Hundred Dollars ($100.00) per share amounting in the aggregate to Two Million Dollars ($2,000,000) and three hundred thousand (300,000) shares of common stock without nominal or par value. The common stock is to be fully paid and non-assessable and has the exclusive voting rights and is all to be issued in exchange for all of the present issued and outstanding Common stock."

The same Article provided:

"The holders of the preferred stock shall be entitled to receive out of the surplus or net profits of the business of the corporation, dividends at the rate of eight per cent (8%) per annum and no more, payable semi-annually on such dates as the Board of Directors may determine. Such dividends on the preferred stock shall be payable before any dividends shall be paid or set apart on the Common stock and shall be cumulative."

(5) That the original total authorized capital stock of the Sirian Lamp Company was, therefore, "Five Hundred Thousand Dollars ($500,000), divided into five thousand (5000) shares of the par value of One Hundred ($100) Dollars each of non voting preferred stock and Thirty Thousand (30,000) shares of common or voting stock, of no par value"; that, by the amended certificate, the authorized capital stock was fixed at 20,000 shares of preferred stock of the par value of $100.00 per share, amounting in the aggregate to $2,000,000, and 300,000 shares of common stock, without nominal or par value; that the 300,000 shares of common stock were to be fully paid and nonassessable; were to have the exclusive voting rights, and were to be issued "in exchange for" all of the then issued and outstanding 30,000 shares of no par common stock.

(6) That the exchange of stock was made, and no other consideration was paid for the 300,000 shares of no par common stock then issued.

(7) That the total authorized capital stock of the Sirian Lamp Company was limited to $500,000 (the aggregate par value of the 5,000 shares of preferred stock at $100 per share), and the issuance of the original 30,000 shares

of no par common capital stock was unauthorized and void, both under its corporate charter and the General Corporation Law.

(8) That the said 30,000 shares of no par common stock "were issued without any legal or valid consideration."

(9) That all of the 300,000 shares of no par common stock, subsequently issued "in exchange for" the said 30,000 shares of no par common stock, "were issued without valid or legal consideration, are illegal and void, and should be cancelled."

(10) That no dividends have ever been declared or paid on the preferred stock of the Sirian Lamp Company, and, since its organization, it has been under the exclusive management and control of directors elected by the holders of the pretended outstanding common stock and by officers selected by them; that the present outstanding preferred stock consists of 17,818 shares, from the sale of which the corporation received $1,781,800, more than two-thirds of which has been dissipated and lost by the payment of exorbitant salaries to the officers of the corporation and to officers of affiliated companies, and also through losses sustained by unauthorized, illegal and unsound investments in shares of affiliated companies.

Some detailed allegations also appear with respect to various investments made by the Sirian Lamp Company, which resulted in losses, but it seems unnecessary to set them out.

(11) That unless the entire 300,000 shares of pretended no par common capital stock of the Sirian Lamp Company, so issued without authority and without valid consideration, are cancelled, and a receiver or receivers *pendente lite* be appointed for that corporation, as auxiliary and preventive relief, there is great danger that its assets

will be further dissipated, to the detriment of the corporation and the holders of its preferred stock.

The complainants, therefore, seek to cancel the entire no par common stock issue of the Sirian Lamp Company on two grounds:

(1) Because the original 30,000 shares of no par common stock exchanged for the present issue, were not authorized by the pertinent provisions of the General Corporation Law or by the corporate charter of the Sirian Lamp Company, and were, therefore, void; and

(2) Because the original stock issue of 30,000 shares, so exchanged for the present common stock, was wholly without consideration, and also void on that ground.

The first cause of action is based on the complainants' construction of the pertinent provisions of the General Corporation Law and of the corporate charter of the Sirian Lamp Company. The supposed charter provisions and other material facts are alleged in the bill. The same facts are also pertinent to the alleged lack of consideration, on which the second cause of action is based. That allegation is specifically denied by the defendants' pleas, and the supporting answers purport to state the true facts; no other facts are expressly pleaded.

The sufficiency of the pleas as a defense to the second cause of action, will be considered first. The defendants recognize the rule that a negative plea can deny only one essential allegation of the bill; and that otherwise it would be multifarious. *Langdell, Sum. Eq. Pl.*, § 108. They also recognize that such a plea must be supported by an answer giving the real facts. *Sanders v. King*, 6 *Madd.* 61; *Langdell, supra*, § 102. So, in addition to a denial of any lack of consideration, they allege that the 30,000 shares of no par common stock were originally issued by the corporation to one John Allen Heany on May 9, 1922, pursuant to a contract

between them of that date, in consideration for the grant of an exclusive license to the corporation to make, use and sell in the United States and Canada certain filament type incandescent electric lamps, specially designed for lighting purposes, without the payment of any royalties therefor. The rights given by that contract embodied any and all inventions relating to such filament type incandescent electric lamps, protected by certain letters patent and any patents pertaining thereto that might be granted prior to May 9, 1922. A list of the existing patents is attached to the answers.

No replications were filed by the complainants to the defendants' pleas, and their legal sufficiency was set down for argument under *Rule* 47 of this court. That rule provides:

"When a plea is filed, a copy thereof shall be forthwith served by the Register upon the complainant's solicitor, and the date of such service entered of record. The complainant within fifteen days thereafter shall file a declaration whether he will set the plea down for a hearing as to its sufficiency in law; or else he shall file a replication to the plea, putting in issue the facts alleged in the plea. In either case the plea shall, upon application of either the complainant or defendant, be tried at such time and in such manner as the Chancellor shall fix, the well pleaded allegations of the bill being taken to be true for the purpose of trying the plea.

"If within fifteen days after service of such notice a replication to the plea be not filed, the plea shall be taken to be true in fact, and shall stand for argument upon the question of its sufficiency, and be heard as ordered by the Chancellor.

"If the plea be sustained, then after fifteen days the bill shall stand dismissed with costs on the complainant, provided within said fifteen days leave to amend the bill be not asked by the complainant in writing, or such leave be denied by the Chancellor."

Under *Rule* 47, within fifteen days after service of a copy of a plea on complainant's solicitor, he must, therefore, (1) "file a declaration whether he will set the plea down for a hearing as to its sufficiency in law"; or (2) "file a

replication to the plea, putting in issue the facts alleged" in it. (3) "In either case", upon application of either party, the plea shall be tried "in such manner as the Chancellor· shall fix, the well pleaded allegations of the bill being taken to be true for the purpose of trying the plea." (4) The next paragraph provides, however, if within fifteen days after "service of such notice a replication to the plea be not filed, the plea shall be taken to be true in fact, and shall stand for argument upon the question of its sufficiency, * * *."

The complainants claim that if both the allegations of the bill and the allegations of the plea are to be taken as true when the sufficiency of the plea is questioned, the filing of negative pleas could not have been contemplated by the rule. When, however, its provisions are considered in connection with the early equity practice, the only reasonable conclusion as to its intended meaning is that if a plea be filed by the defendant, but there is no replication thereto, and the legal sufficiency of the plea is set down for argument, only such of the well pleaded allegations of the bill as are not denied by the plea will be regarded as true.

A plea in equity is in the nature of a special answer to all, or some part, of the complainant's bill, but on a single issue. *Electrical Research Products Corp. v. Vitaphone Corp.*, 20 *Del. Ch.* 417, 171 *A.* 738. Under the ancient practice, the legal sufficiency of a plea could always be determined by setting it down for argument, as on general demurrer. *Electrical Research Products Corp. v. Vitaphone Corp., supra;* 16 *Encyc. Pl. & Pr.* 618, 619. In that procedure, the truth of the facts alleged in the plea was, therefore, admitted. *Electrical Research Products Corp. v. Vitaphone Corp., supra; Fletcher, Eq. Pl. & Pr.*, § 280; 16 *Ency-Pl. & Pr.* 620. The facts alleged in the bill, and not denied by the plea, were also regarded as true (*Fletcher, supra*) ; and on all of those facts and on the issues raised thereby,

the court usually, sustained or overruled the plea. *Fletcher, supra,* § 280; 16 *Encyc. Pl. & Pr.* 620. The same procedure has been recognized in this State since *Rule* 47 was adopted. *Electrical Research Products Corp. v. Vitaphone Corp., supra; Trounstine v. Remington Rand, Inc.,* 22 *Del. Ch.* 122, 194 *A.* 95. When no replication is filed, the situation is somewhat the same as though that phase of the case were before the court for determination on bill and answer. 16 *Ency. Pl. & Pr.* 620; *Simons v. Millman,* 57 *Eng. Rep.* 779. Under the early equity practice, even if the plea were sustained, the truth of the facts alleged in it could be denied by a subsequent replication. *Fletcher, supra,* § 281; *Story's Eq. Pl.,* § 697. Moreover, when a plea was filed, for practical reasons there were usually two hearings: the first, on its legal sufficiency, and the second, on the truth of the facts alleged. This was because the sufficiency of a plea could not be questioned under a replication denying its factual allegations. *Id.* Evidently, *Rule* 47 was largely intended to simplify this cumbersome practice; under it, when a plea is filed, though there be a replication thereto, only one hearing is necessary for the determination of all questions, whether of law or fact. If no replication is filed, and the sufficiency of the plea is alone challenged, as the Chancellor will have before him the uncontroverted facts of the bill and the facts alleged in the plea, he may take such action as the circumstances demand, including the entry of an order dismissing the bill, should the plea be sustained. See *Rule* 47 *(par.* 3).

Originally, there was some hesitation about permitting the use of negative pleas (*Milligan v. Milledge,* 3 *Cranch* 220, 2 *L. Ed.* 417; *Langdell's Sum. Eq. Pl.,* § 102), but they have long since had a recognized place in equity pleading. *Langdell's Sum. Eq. Pl., supra; Fletcher, Eq. Pl. & Pr.,* 328; *Story's Eq. Pl.,* § 668.

Professor Langdell, in discussing their function, points out:

"\* \* \* It would often happen, however, that a defendant would have no affirmative defence to a bill, and yet the bill could not be supported because of the falsity of some material allegation contained in it; and, if the defendant could deny this false allegation by a negative plea, he would thereby avoid giving discovery as to all other parts of the bill. \* \* \*" *Langdell's Sum. Eq. Pl., supra.*

Nor was *Rule* 47 intended to prohibit their use. Since its promulgation, this court has not only assumed that such pleas were permissible (*Trounstine v. Remington Rand, Inc.,* 22 *Del. Ch.* 122, 194 *A.* 95; *MacKenzie Oil Corp. v. Omar Oil Corp.,* 14 *Del. Ch.* 36, 120 *A.* 852; *Wampum Oil Corp. v. Lago Petrol. Corp.,* 19 *Del. Ch.* 124, 163 *A.* 622), but a note of Chancellor Curtis, appended to the rules when they were adopted by him, expressly stated:

"A procedure is provided for the trial of the issues raised by a plea, the practice as established being crystallized into concrete rules."

The complainants do not deny that negative pleas were permissible prior to that time, and the reasonable conclusion is that the next to the last line of the first paragraph of *Rule* 47 must, therefore, be read as though the words "except as denied by the plea" were inserted between the word "bill" and the word "being".

The certificate of incorporation, a copy of which is attached to the complainants' bill, specifically provides:

"The stock of the corporation may be issued by the corporation from time to time for such consideration as may be fixed from time to time by the Board of Directors thereof, and such action of the Board of Directors shall be accepted as conclusive and binding as to the adequacy of such consideration."

So, in the absence of a clear abuse of discretion by the board of directors, the amount of the consideration received for a no par common stock issue is usually of no moment, provided its quality is such as to meet the constitutional requirements. *Finch v. Warrior Cement Co.,* 16 *Del. Ch.* 44, 141 *A.* 54; *Bodell, et al., v. General Gas & Elect. Corp.,* 15 *Del. Ch.* 119, 132 *A.* 442. No abuse of discretion appears

here. Apparently, the complainants do not deny that an unconditional license to use a patent right is property within the meaning of *Section 3 of Article IX of the Constitution,* and that ordinarily, corporate stock may be issued therefor. *Fletcher, Encyc. Corp.,* § 5189; *Robbins, et al., v. Ideal Wheel & Tire Co.,* 93 *N.J. Eq.* 293, 115 *A.* 525; see *Finch v. Warrior Cement Co., et al.,* 16 *Del. Ch.* 44, 141 *A.* 54. They contend, however, that the contract of May 9, 1922, attached to the defendants' pleas, granting to the corporation the right to use certain patents, and in consideration for which its entire no par common stock was issued, was subject to certain terms and conditions, and that the defendants' supporting answers are defective because they do not allege full performance thereof. It appears from the preamble of the contract that its purposes were:

(1) To give Sirian Lamp Company the exclusive patent licenses mentioned in the pleas; and (2) To obtain for Sirian Lamp Company the consulting services of one John Allen Heany for the term of three years.

The real pertinent provisions were:

"First: Second Party (the corporation) agrees that it will provide the necessary working capital to exploit First Party's inventions relating to Filament Type Incandescent Electric Lamps in the United States and Canada, and will within the next six (6) months from the date of this instrument provide in its treasury the sum of One Hundred and Fifty Thousand Dollars ($150,000.00) to be used in the development of a lamp manufacturing business based upon First Party's inventions.

\*     \*     \*     \*     \*

"Eleventh: It is agreed that the license contained herein is to automatically terminate if and when any of the terms and conditions of this agreement are breached or violated by Second Party."

The complainants claim that the defendants should have alleged performance of the provisions of the "First" paragraph of the contract; but the license to use the patent rights was definitely granted to the corporation, and no forfeiture

by failure to perform its part of the agreement could take effect until at least six months thereafter. The mere fact that the corporation may be required to expend money in the future to protect its interests in property rights acquired, and for which it has issued stock, does not necessarily render the consideration invalid. The fact that the defendant corporation "has not at any time engaged in manufacturing or conducting laboratories on a commercial basis," as alleged in the bill is therefore unimportant in determining the complainants' rights. Nor was it necessary for the defendants to allege how long Heany held the stock so issued to him. The necessary conclusion is that the defendants' pleas and the supporting answers set up a valid defense for the alleged lack of consideration for the issuance of the no par common stock of the Sirian Lamp Company. Moreover, the complainants, in setting down a plea for argument, cannot disregard the express provisions of the rule and reserve the right to file a replication after the time fixed thereby.

But the defendants' pleas neither require nor permit a determination of the complainants' rights under the other cause of action alleged in the bill.

When only one cause of action is alleged, and the sufficiency of the pleas is set down for argument, every issuable fact alleged in the bill, and not denied by the pleas and by the supporting answers, must be regarded as true. *Langdell, supra,* §§ 102, 106; 1 *Daniell's Ch. Pl. & Pr.* (. . . . Ed.) 694; *Sims v. Lyle,* Fed. Cas. No. 12891, 4 *Wash. C.C.* 301. A different rule applies when several causes of action are alleged in the same bill and the pleas are applicable to but one of them (*Langdell, supra,* §§ 103, 105) ; the defendants must then respond in some manner to each of the various causes of action so alleged. *Id;* 19 *Am. Jur.* § 199; *Livingston v. Story,* 9 *How.* 632, 9 *L. Ed.* 255. The latter rule governs this phase of the case. In terms, the pleas in con-

troversy are confined to the denial of the alleged lack of consideration for the no par common stock, and the general preliminary statement that they are addressed to "all of the * * * relief prayed by the complainants' bill" cannot broaden the scope of the language used. In any event, if a plea purports to apply to the whole of a bill, but does not, it is bad as to the part not covered thereby. *Story's Eq. Pl.,* § 693. As we have seen, the bill purports to state the pertinent provisions of the corporate charter of the Sirian Lamp Company and other material facts relating to the cause of action relied on, but the truth of these allegations is not admitted and cannot be assumed by the defendants' failure to plead to that cause of action. Separate counts covering the several causes of action are not required; but facts, impliedly admitted by the plea filed to one cause of action, though pertinent, are not applicable to another cause of action to which no plea has been filed.

It is not contended that the alleged mismanagement of the corporation has any bearing on these questions.

The bill will be dismissed, as to the alleged lack of consideration, unless it be amended pursuant to *Rule* 47; further proceedings will be necessary with respect to the other cause of action alleged.

An appropriate decree and order will be entered accordingly.