WILLIAM H. WEST and MABEL PHELPS LAWTON, Executrix of the Last Will and Testament of WILLIAM M. LAWTON, deceased,

*vs.*

SIRIAN LAMP COMPANY, a corporation of the State of Delaware, H. & B. SECURITIES CORPORATION, CHESTER H. BRASELTON, DONALD R. McLENNAN, WILLIAM G. URMSON, ADAM HAMIN and CLEMENT ORVILLE MINIGER.

*New Castle, June 15, 1945.*

*Hugh M. Morris* and *Alexander L. Nichols* (of Morris, Steel & Nichols) for complainants.

*Howard Duane* and *Harry Rubenstein*, (William Bohleber, of New York City, of counsel), for corporate defendant and appearing individual defendants.

HARRINGTON, Chancellor: In the original bill, the complainants sought to cancel the entire issue of the no par common and voting stock of the corporation:

(1) Because the original 30,000 shares of no par common stock, exchanged for the present issue of 300,000 shares,

were not authorized by the pertinent provisions of the General Corporation Law or by the charter of the Sirian Lamp Company, and were, therefore, void;

(2) Because the original 30,000 shares of no par common stock, exchanged for the present outstanding issue of 300,000 shares, were issued without "any legal or valid consideration therefor," and were likewise void on that ground.

No pleas were filed to the first cause of action alleged, but the defendants have since demurred thereto, and the complainants concede that the demurrer must be sustained and that part of the bill dismissed.

The negative pleas filed to the second cause of action alleged specifically denied that "the thirty thousand (30,-000) shares of common or voting stock of no par value of the Universal Lamp and Wire Company (now Sirian Lamp Company) were issued without any legal or valid consideration."

Supporting answers accompanying the pleas also alleged that the said 30,000 shares of no par common stock were issued to one John Allen Heany pursuant to a contract with him, dated May 9, 1922, and the consideration therefor was the grant by Heany to the corporation of "the exclusive license to make, use and sell in the United States and Canada, without the payment of royalty, Filament Type Incandescent Electric Lamps specially designed for lighting purposes, embodying any or all inventions of the following United States Letters Patent and the following then pending applications for United States Letters Patent."

A copy of the Heany contract and a list of the patents and patent applications were appended to the answers.

No replications were filed to the pleas, but their legal sufficiency as a defense to the action was set down for argument by the complainants under *Rule* 47 of this court and was sustained. See *West v. Sirian Lamp Co., ante p.* 90, 37 *A.2d* 835.

The proposed amendment to the bill alleges, in substance, on information and belief that the defendant corporation purported to issue the 30,000 shares of no par common voting stock to one John Allen Heany upon the execution of an instrument in writing, dated May 9, 1922, a copy of which is attached to the bill. It further alleges:

(1) That the shares so issued to Heany were assigned without consideration promptly after the execution of the agreement to others (some of whom are listed) who had brought about the organization of the company.

(2) That the agreement was employed as a means of having the shares issued without consideration to such persons in evasion and violation of the laws of the State of Delaware.

(3) That the purported license granted to the company pursuant to the agreement "was valueless and known to be by the officers and directors of said Sirian Lamp Company at the time of said 'agreement'; that the patents theretofore issued and referred to in said 'agreement' had not been exploited or proved to be of any commercial use or value; that none of the lamps, machines or said patents has ever gone into commercial use; that said patents were lacking not only in utility but in novelty and invention as well; that the said John Allen Heany had no actual consummate patent rights in the pending patent applications listed in said 'agreement' or in any thereof, and at the time of said 'agreement' it was not at all certain that any Letters Patent would issue upon said applications or any thereof, or that if any such patent or patents should issue thereon that it or they would be possessed of utility, novelty or invention indispensable to their validity; that no patent granted upon any of said applications has ever gone into commercial use."

(4) That in and by the first paragraph of the agreement, the company agreed to provide the necessary working

capital to exploit the inventions covered by its license and would within six months from the date of the agreement provide in its treasury the sum of $150,000 to be used in the development of a lamp manufacturing business based upon Heany's inventions and the license was made expressly subject to such term and condition; that the company did not within six months from the date of the agreement provide in its treasury the sum of $150,000 for such purpose.

(5) That in and by paragraph Sixth of the agreement, the company agreed to pay all necessary patent expenses to fully protect in the United States and Canada any and all inventions of Heany relating to filament type·incandescent electric lamps until May 9, 1925, and that the company has not at any time since the date of the agreement protected in the United States or in Canada the said alleged inventions or any thereof.

(6) That the agreement contained the following express provision: "It is agreed that the license contained herein is to automatically terminate if and when any of the terms and conditions of this agreement are breached or violated by second party."

That under such express terms of the agreement, it automatically terminated at the expiration of six months from the date thereof for failure of the company to comply with the terms and conditions set forth in paragraphs First and Sixth thereof; that the company knew at the time the agreement was entered into that even if the patents purported to be licensed thereunder possessed utility, novelty or invention, it would not be possible or practical for the company to obtain any value· by, from, or under the license within such period of six months; that the company knew, or should have known, at the time the agreement was entered into that there was little or no probability that it could provide during such period of six months in its treasury the sum of $150,000 to be used in the development

of a lamp manufacturing business based upon Heany's alleged inventions.

(7) That according to the annual report of the company filed with the Secretary of State of Delaware on January 2, 1923, the amount of preferred stock then outstanding was only $11,500, and that in said report the company claimed exemption from taxation "because not as yet actively engaged in business."

(8) That the company continuously reported in the annual reports filed with the Secretary of State that it was not actively engaged or had not started to manufacture or was not carrying on any commercial business, and that in the report filed on January 6, 1942, it was stated that the "corporation discontinued all activities about June 1, 1930 and since that time has not engaged in any experimental work or in commercial enterprise."

A copy of the Heany contract of May 9, 1922 was also attached to the proposed amendment.

By these allegations, the complainants seek an opportunity to prove that the Heany contract, which licensed the corporation to use certain patents without the payment of any royalties in exchange for the common stock issue, was a mere fraudulent scheme to procure that stock for the promoters of the corporation and their associates without the payment of any real consideration to the corporate defendant; that the officers and directors of the corporation knew that the said patents and the pending applications therefor had not been exploited or proven to be of any commercial use or value; that such patents and patent applications were not only lacking in novelty but also in utility and invention, and even if they had any possible utility, the corporate officers and directors did not intend to exploit or commercialize them within six months from the date of the contract; that when said licenses were given they knew there was little or no probability that they would be able to provide

$150,000 for that purpose within the designated.time; that the corporate officers did not attempt to exploit the Heany patents, and pursuant to the first and sixth paragraphs of the agreement their rights ceased at the expiration of the six months; that the common stock was accordingly issued by the corporation without any legal or valid consideration having been paid therefor, and should be canceled. There are somewhat similar allegations with respect to the pending applications for patents.

Pure negative pleas introduce no new facts, and, as a general rule, when they are filed to a bill, the defendants are required to file supporting answers disclosing such of the real facts within their knowledge, and on which the pleas are based, as will aid the complainants in proving the allegations denied by the pleas. *West v. Sirian Lamp Co., ante p. 90, 37 A. 2d 835; Spivey v. Frazee, 7 Ind.* 661; *Langdell's Eq.Pl.*, §§ 102-106; 30 *C.J.S., Equity,* § 320, *p.* 743. The defendants recognized that rule and acted accordingly; but as the facts stated in the supporting answers are merely for the purpose of the limited discovery, ordinarily required of a defendant for the complainant's benefit, they usually form no part of the defense relied on in the pleas. *Langdell's Eq.Pl., supra;* 16 *Ency.Pl & Pr.,* 615; 30 *C.J.S., supra.* See also *Benjamin Foster Co. v. E. L. Bruce Co.,* 17 *Del.Ch.* 111, 149 *A.* 303; 19 *Amer.Jur.* 199. The scope of any replications that might have been filed to the negative pleas would, therefore, have been quite limited.

The right to file negative pleas under *Rule* 47 was the primary question considered and determined on the argument as to their validity, though other questions relating to equity practice under that rule were also discussed. See *West v. Sirian Lamp Co., supra.* Relying on that opinion, the defendants claim that consideration for the stock issue in controversy was established by the procedure adopted by the complainants, and that an amendment again raising that question should not be permitted. The proposed amend-

ment, however, alleges fraud by the corporate officers and directors in issuing the stock, and no such charge was made in the original bill. See *Ellis v. Penn Beef Co.*, 9 *Del.Ch.* 213, 80 *A.* 666. In modern equity practice, amendments to bills have largely taken the place of special replications. *Story's Eq.Pl.*, § 678; *Harris v. New York Life Ins. Co.*, 26 *Del.Ch.*, 134 24 *A.2d* 543.

Furthermore, *Rule* 49 provides that:

"Amendments to pleadings, when application therefor is made with diligence, will be granted in furtherance of justice and on such terms as the Chancellor may impose."

But the defendants emphasize the rule that the quality of the consideration paid for stock issued by a corporation is usually the essential element in determining its validity. *West v. Sirian Lamp Co., supra; Ellis v. Penn Beef Co., supra; Diamond State Brewery, Inc. v. De La Rigaudiere,* 25 *Del.Ch.* 257, 17 *A.2d* 313. They say that characterizing the transaction in this case as "a mere scheme or device, fraudulent in its inception" is a mere conclusion, and does not make it so; that a United States Goverment patent is *prima facie* evidence of a property right, and the mere allegation, without other facts, that the patents and patent applications, exchanged for the common stock issue, were lacking in utility, novelty and invention, and known to be such by the corporate officers and directors when they issued the stock, would not be sufficient to permit proof of a fraudulent lack of consideration. See *Eastern States Petroleum Corp. v. Universal Oil Products Corp.*, 22 *Del.Ch.* 333, 2 *A.2d* 138; *Finch v. Warrior Cement Co.*, 16 *Del.Ch.* 44, 141 *A.* 54; 2 *Walker on Patents, (Deller's Ed.)* 1273. The defendants seem to concede, however, that, as a general rule, the presumption of validity may be overcome by clear and convincing proof. 2 *Walker on Patents, supra.*

Lack of particularity in the allegations of the amendment, therefore, seems to be the defendants' main objection.

The charges made by the complainants may not be easy to prove, but the question is wholly one of pleading, and not of fact, and their application to amend will be granted.

It appears from the bill that slightly less than one-half of the common stock is owned by persons who are not parties to the suit, and, whatever the proof might be, no decree canceling their shares could be entered; but the motion to amend will not be denied because of the lack of proper, but not essential, parties.

An order will be entered in accordance with this opinion.