MOE FRANK, appellant,

*v.*

LOUIS FRANK, respondent.

[Decided February 2d, 1922.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Griffin, who filed the following opinion:

"The purpose of this suit is to declare the existence of a partnership between two brothers, Moe and Louis Frank, masons and plasterers, and for an accounting, and to have it declared that certain lands, in the city of Bayonne, mentioned in the bill, standing in the name of Louis, are partnership property, or that a resulting trust exists therein in favor of Moe.

"In 1910 Moe was nineteen years of age, and, as I recall it, Louis was not quite twenty-one. They were engaged in the plastering business. Moe says that he did the plastering work, and Louis was the master, without a Union card, while he, Moe, had one; that Louis, in order to work, was required to have a Union card. This statement is somewhat negatived from the fact that Louis, in 1914, did work as a journeyman, and had permits, which cost $5 apiece to work for a period. However, Moe says he received no wages; that all he received was a couple of dollars a week, and, occasionally, his clothes, and the money was turned in to his mother for the support of the family, con-

sisting of the father and mother and eleven children, only two of whom were working, namely, Moe and Louis. It appears that the father worked very little. Moe also says that the surplus, over and above the sum turned in to the mother, was to be put in bank in the joint account. The fact is that no moneys in the nature of wages were paid by Louis to Moe from 1910 until around 1914, when Moe became engaged in marriage, and he was then paid his regular weekly wages, out of which he paid his board to his mother. From 1910 to 1914 or 1915 Moe worked for others than his brother, and the brother himself engaged as a journeyman on his own account. The building business was not very active and employment was not readily obtainable.

"The only circumstance, to my mind, which tends to support the theory of Moe as to the partnership is the fact that he was not paid regular wages, such as an employer would pay a journeyman. But it must be borne in mind that Moe was a younger brother [Louis being about a year and a half to two years his senior], and that it was a family agreement wherein Louis says he turned in to his mother Moe's money, after paying him two or three dollars for spending money and buying him clothes. While, as a matter of fact, Louis does not really know how much he turned in, I take it that, in all probability, he turned in a sum equivalent, or almost equivalent, to Moe's earnings; and, in addition to this, turned in a very large portion of his profits and earnings, without undertaking to keep an account of the sums so turned in on the account of either. That there could not have been much saved is apparent from the fact that there were thirteen mouths to feed out of the earnings of these two sons, and work was not at all times plentiful.

"In 1910 or 1911 the two lots mentioned in the bill were bought for $1,550. These were bought by Louis and one Koenigsberg, who says that he understood that Louis had bought one-half for himself and Moe, and that he, Koenigsberg, bought the other half for himself and his brother, who was his partner, and that for convenience the property was taken in the joint names of himself and Louis, because Moe was then under twenty-one years of age. The purchase price was paid by giving a mortgage for $1,000 and cash $275 paid by Louis, and $275 in

cash and notes paid by Kœnigsberg. Subsequently, in 1911, or about a year after the purchase, Louis wanted to build, and his co-owner did not care to do so, and Louis bought his interest out by giving him the sum he had paid, plus $75 as profit. This purchase price was paid partly in cash and the balance in notes payable $25 a month.

"The building was undertaken, which, according to the figures, cost about $9,000, or thereabouts. When completed, a seven-thousand-dollar first mortgage was put upon it and a fifteen-hundred-dollar second mortgage, which two mortgages practically represented the entire cost of the two buildings, which were two six-family houses. Moe worked on this property, but was not directly paid wages, his earnings being turned in to his mother, as above stated, for the support of the family.

"There was also work done on a building of a carpenter or plumber by both Moe and Louis, the proceeds of which were credited on a bill against Louis, and the balance paid to the carpenter or the plumber. Thus, Moe, to the extent of what became due to him on this outside work, contributed towards the cost of Louis' building.

"There is some evidence that Louis had made statements that Moe was a partner, and that he would give Moe his share when the buildings were sold. This testimony, after a lapse of several years, is rather vague, and hardly rises to the dignity of proof, when it is considered that Louis entered into possession of the property, handled it as his own, ran all the risks, made all the mortgages, raised all the money to carry the property, during a portion of which time it was not a paying proposition; that he continued to be the owner, without apparently any demand or claim being asserted against him until this bill was filed, or shortly before, and that even after Louis was inducted into the army and gave a power of attorney to another brother to collect the rents, Moe, with knowledge of this fact, did not assert his rights as a partner, or claim that he was entitled to take charge of the premises. All these things indicate, to a great extent, that Moe did not understand that he was a partner, or that he had any interest in the premises, and probably would not now

assert it were it not for the fact that in June of 1919 he and Louis became estranged and have not spoken since.

"The conclusion I have reached is that the proof offered is insufficient to establish either the existence of a partnership between the brothers or a resulting trust in favor of the complainant in the premises in question.

"I will advise a decree dismissing the bill."

*Mr. Aaron A. Melniker,* for the appellant.

*Messrs. Dembe & Dembe,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Griffin.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—14.

*For reversal*—None.