GEORGE PAPPAS,

*vs.*

WILLIAM VENETSANOS.

*Kent, June* 28, 1933.

*William M. Hope* and *Charles L. Harmonson,* of the firm of Hope and Harmonson, and *William Prickett,* for complainant.

*Howard E. Lynch, Jr.,* and *George M. Fisher, Jr.,* for defendant.

THE CHANCELLOR: The instrument which the bill prays may be cancelled is as follows:

"This agreement made this sixth day of November, 1931, between George Pappas of the Town of Smyrna, County of Kent and State of Delaware, for himself, his heirs, executors, and administrators, of the one part, and William Venetsanos of the Town of Smyrna, County of Kent and State of Delaware, for himself, his heirs, executors, and administrators of the other part, witnesseth, that the said George Pappas in and for the consideration of one dollar and other valuable consideration, does hereby give unto the said William Venetsanos one-half interest in my road side restaurant business located on the East side of the Du Pont Boulevard between North and Mt. Vernon Streets in the Town of Smyrna, County and State aforesaid; also one-half interest in all my real estate located in the State of Delaware.

"In Witness Whereof, the said parties have hereunto set their hands and seal the day and year first above written.

"George Pappas  [Seal]
"W. Venetsanos  [Seal]

"Signed, Sealed and Delivered in the presence of:

"A. Louise Denney
"Robert H. Denney."

The complainant alleges that he is the proprietor of a roadside restaurant business and has been since before 1926, and that in February of that year he engaged the defendant, his second cousin, as a cook; that the defendant was without money when he came to work and was willing to work merely for his board; that shortly after the defendant started to work, the complainant agreed to pay him a wage of thirty dollars per week; that the defendant did not desire to draw his pay as it was earned, but preferred to let it accumulate in the complainant's hands; that in November, 1931, complainant was about to take a trip to Florida, to be gone several weeks and that the defendant expressed some fear that something might happen to the complainant while absent in Florida and that the defendant should have some protection to assure

him that the accumulated wages due him would be paid; and that the paper in question was executed to satisfy the defendant's desire for protection; but that it was not to be effective unless the complainant should die while absent in Florida; that the instrument was never delivered to the defendant; that it was retained by the complainant together with a duplicate copy, and deposited by him in his lock-box in the Fruit Growers National Bank and Trust Company, at Smyrna, Delaware; that while the complainant was absent in Florida, the defendant secured the key to the lock-box and by a trick succeeded in inducing the bank officials to grant him access to the box; that he purloined one copy of the instrument from the box, and now retains possession of it under a claim of right, asserting himself to be a partner of the complainant as one-half owner of the business referred to, using the instrument in his possession as evidence of his partnership rights. The complainant insists that the defendant is not and never was a partner of his, and prays that the instrument in the defendant's possession be decreed to be fraudulent and void and that the same be delivered up to be cancelled.

The defendant claims by his answer and in his proof that when he came. to work with the complainant in 1926 he came not as an employee on wages but as a partner, and that the instrument was executed in 1931, just prior to the complainant's departure for Florida, in order to evidence the partnership relation which he claims had been continuing since 1926. The defendant admits gaining entrance to the lock box and taking therefrom one of the copies of the paper. He contends that one copy had been delivered to him and therefore belonged to him, and that he suggested to the complainant that he lock it in the box for safe-keeping. He claims the box was the joint box of himself and the complainant, though it was rented in the name of the complainant alone.

After the complainant returned from Florida, he paid

$9,050 to the defendant, which sum the complainant contends, together with other payments, covered a full thirty dollars per week wage due the defendant for all the time since 1926 during which the defendant had allowed his wages to accumulate. The defendant contends that the said payments were not in settlement of accumulated wages, but were for one-half the profits made by the alleged partnership since its alleged inception in 1926.

The testimony in the cause is very voluminous and runs into great details of fact. It does not seem to me to be necessary to recite it at length or to seek to point out its conflicts. What follows is all that I feel called upon to say in disposing of the case.

It is to be borne in mind that the pleadings do not call for a decree formally declaring either the existence or non-existence of a partnership. The bill's issue is a narrow one, viz., did the instrument come into the defendant's possession by intentional delivery, or was his possession of it acquired by a fraudulent abstraction from the box contrary to the consent of the complainant?

The fact that the complainant executed the instrument is not alone sufficient of course to give it the effect of binding validity against him. Execution must be shown to have been accompanied by intentional delivery. *Jones v. Bush,* 4 *Har.* 1. Delivery cannot be secured by fraud or by a purloining of the instrument. *Jamison v. Craven,* 4 *Del. Ch.* 311, 336; 8 *R. C. L., p.* 980; 18 *C. J., p.* 202.

That the defendant abstracted the instrument from the lock-box by practicing a fraud on the bank officials is established in my opinion by the decided weight of the evidence. But if there had previously been a good delivery of the paper whereby the right to its possession was his, I agree with the solicitor for the defendant in his contention that the manner of his resecuring its physical possession, even though fraud was used in obtaining access to the place of its deposit, has no bearing on the validity of the instrument.

So that it becomes necessary, in view of the contentions, to examine the evidence further with the view of discovering whether or not the paper had been delivered to the defendant so as to make it his document evidencing what he claims are his partnership rights.

Now the evidence upon that phase of the case is at some points highly conflicting. It follows two main lines, viz., (a) the circumstances attending its preparation in the conveyancer's office, and (b) whether or not the complainant and defendant were partners during the years from 1926 to 1932, for it appears to be thought by the parties that the existence or non-existence of the alleged partnership during those years preceding the instrument's date, is an important fact to be established. If the partnership did exist, as contended by the defendant, it is argued that the likelihood of delivery is confirmed; and on the other hand, if the partnership did not exist, as is contended by the complainant, it is argued that non-delivery is corroborated. Thus, the issue of the prior existence of the alleged partnership has been drawn into the case and much testimony has been taken as bearing thereon. Upon this issue the burden lies upon the defendant who sets up the affirmative side of it. *Robinson v. Green*, 5 *Har.* 115.

The face of the instrument does not conform to what either of the parties contends was its purpose. It does not in its terms bear out the complainant's contention that it was conditional for its effectiveness upon his not returning from his journey and was to serve as mere security for the defendant's accrued wages; neither does it in terms bear out the defendant's contention that it was in recognition of a theretofore existing relationship between partners, for its language is of a present grant, viz., "George Pappas * * * does hereby give," etc.

Both parties therefore rely on evidence outside the instrument itself to give to it its true purpose. That other evidence follows the two main lines before alluded to.

As to the one designated above as (a), I am of the opinion that Denney, the conveyancer who drew the paper, tilts the scales in favor of the complainant. Denney is entirely disinterested. While at first he was in doubt as to whom he delivered the papers to, he finally was positive in asserting his recollection to be that it was to the complainant. He was quite positive in his statement that the complainant in instructing him in the presence of the defendant upon what sort of paper they wanted drawn, stated that it was merely a paper to secure the defendant, and that it was to serve some temporary purpose. The complainant states that he took the envelope containing the two copies to the bank alone, and that the defendant was never to have any rights under the instrument unless he, the complainant, should die while away. In so far as Denney speaks, he supports the complainant's statement. The defendant contradicts the complainant. I may say by way of parenthesis that the defendant's account of his subsequent behavior in securing entrance to the lock-box is so overwhelmingly discredited by the bank cashier and the teller, that even though the manner in which the defendant secured access to the box be conceded to be immaterial, yet the issue of veracity raised by him with the bank officials is so much against him that suspicion is thereby engendered in my mind as to just how far it is safe to accept the defendant's testimony with respect to other aspects of the case.

The circumstances immediately surrounding the signing of the instrument and what was there said are such, I conclude, as to support the complainant's version of the matter.

And so likewise does the weight of the evidence, I conclude, support the complainant's contention with respect to the issue of whether or not there was a pre-existing partnership—an issue to which the line of testimony above referred to as (b) is directed.

I shall not review that testimony in detail. It is too voluminous and too minute in its ramifications. The complainant's business was an established one when the complainant came there. Though related, the complainant and defendant were strangers. The complainant was doing well in his business. The complainant was not in need of a partner. Why he should have agreed to receive his cousin as a partner who had little, if any, funds and who was a stranger to him, it is difficult to understand. For the six years following the defendant's arrival, the complainant acted as though he were the sole proprietor of the business. He bought real estate and personal property, banked all the money in his own name, hired and discharged help on his own responsibility, repaired, improved and rebuilt at his own pleasure, and generally I gather from the testimony, ran the business as he pleased without consulting the defendant who now claims to have been a partner. The principal thing the defendant shows in support of his claim of a partnership is the testimony of some witnesses who say they heard the complainant on certain occasions say something to the effect that the defendant was his partner. The alleged statements of the complainant are quite similar in their effect and in their factual setting in the entire volume of testimony, to those referred to in *Frank v. Frank*, 93 *N. J. Eq.* 491, 115 *A.* 448, 449, which were said by the Vice-Chancellor to "hardly rise to the dignity of proof" in the establishment of partnership relations.

While the defendant has produced witnesses who claim to have heard the complainant speak of the defendant as his partner, the complainant has, on the other hand, produced witnesses who testified to having heard the defendant admit he was only a man working for wages.

I am not aided much by testimony of this sort on either side. What is of most importance to my mind, in resolving the pronounced issue of fact between the com-

plainant and the defendant upon the question of the pre-existence of the partnership, is the acts and conduct of the parties throughout the period when the alleged relationship of the parties is supposed to have existed and before controversy had engendered bias and possibly bitterness.

Without commenting further upon the evidence or noticing further the arguments thereupon made by the solicitors for the parties, I announce my conclusion to be that the complainant has supported his bill and the relief as prayed should be granted.

Decree accordingly.

NOTE.—From the decree entered in accordance with the foregoing opinion, the defendant took an appeal. The opinion of the Supreme Court will appear in a subsequent volume of *Delaware Chancery Reports*.