WILLIAM VENETSANOS,

*vs.*

GEORGE PAPPAS.

*Kent County, March* 6, 1936.

*James H. Hughes* and *Charles L. Terry, Jr.,* for complainant.

*William M. Hope,* of the firm of Hope & Harmonson, of Dover, and *William Prickett,* of Wilmington, for defendant.

The CHANCELLOR: The plea presents the question of whether the complainant is estopped by the decree in the former cause from asserting in this one the existence of the alleged partnership. The parties in the two causes are the same, and the only question is whether the existence of the partnership was in issue and determined in the prior cause within the meaning of the law of estoppel.

In *Jones v. Charles Warner Co.,* 2 *Boyce* (25 *Del.*) 566, 83 *A.* 131, 134, it was said that "the rule is general that a former judgment on the merits, between the same parties, in a court of competent jurisdiction, is conclusive and final as to any issue actually litigated and determined in the former action, however erroneous, and which issue is essential to the maintenance of a second action between them, though it be brought upon a different cause of action." This proposition is not controverted, as indeed it could not be. It was restated and enlarged upon by Judge Harrington in the recent case of *Williams v. Daisey,* 7 *W. W. Harr.* (37 *Del.*) 161, 180 *A.* 908, decided by the Superior Court of this State on October 10, 1935.

A former adjudication is equally effective as an estoppel whether it be a judgment at law or a decree in equity.

What was "actually litigated and determined" in the former suit is a question which has been often noticed and as frequently discussed in many reported decisions. That question presents the particular aspect of the law of estoppel which the case now before the court requires to be examined.

In the opinion delivered by the judges of the House of Lords in the celebrated *Duchess of Kingston's Case,* 2 *Smith's Lead. Cas.* (*12th Ed.*) 754, decided in 1776, there appears the following as touching that question. "Neither the judgment of a court of concurrent or exclusive jurisdiction is evidence of any matter which came collaterally in question, though within their jurisdiction, nor of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment." This statement of the rule has been criticized as lacking precision in some respects. In *Reg. v. Hartington Middle Quarter,* 4 *E. & B.* 780, 119 *Eng. Reprint,* 288, decided by the Court of Queen's Bench in 1855, the question in such connection as the present is stated to be "whether the judgment concludes, not merely as to the point actually decided, but as to matter which it was *necessary* to decide, and which was actually decided, as the groundwork of the decision itself, though not then directly the point at issue." The facts which are concluded by a former judgment, the court in the later course of its opinion described as facts that are "so cardinal to it (the decision) that without them it cannot stand"— facts which are "necessary steps to the decision" and are not "collateral facts."

In the case of *Cromwell v. County of Sac,* 94 *U. S.* 351, 354, 24 *L. Ed.* 195, the Supreme Court of the United States stated that the estoppel could not "extend beyond the point *actually litigated and determined.*" The Supreme Court of Illinois stated the rule to be that the estoppel of

a judgment when relied on in a later cause of action which is different from that on which the prior judgment was rendered, "extends only to questions involved in the issue, and not to any incidental matter, though it may have arisen and been passed on." To the same effect is *Kicinke, et al., v. Petruska, et al.,* 259 *Pa.* 1, 102 *A.* 286, 288, in which the court approvingly quotes the language of an earlier Pennsylvania case (*Lewis' & Nelson's Appeal,* 67 *Pa.* 153) as follows:

"It is too well settled * * * that the estoppel of a judgment extends only to the question *directly involved in the issue,* and not to any incidental or collateral matter, though it may have arisen and been passed upon."

Again in *Hunter, Trustee, v. Davis,* 19 *Ga.* 413, it is stated that "a judgment is not, as we think, technically conclusive of any matter, if the matter is not such, that it had, of necessity, to be determined before the judgment could have been given," and in *Sly v. Hunt,* 159 *Mass.* 151, 34 *N. E.* 187, 188, 21 *L. R. A.* 680, 38 *Am. St. Rep.* 403, the same thought was differently expressed as follows, "the estoppel is not confined to the judgment, but extends to all facts involved in it, as necessary steps, or the groundwork upon which it must have been founded." Such is the tenor of all the authorities both American and English, and further citations can serve no purpose other than that of cumulation.

The principle is so unyielding in its application that it applies even though the collateral facts have been put in issue by the pleadings and directly decided. *Standard v. Hubbell,* 123 *N. Y.* 520, 25 *N. E.* 1084; *Landon v. Clark, et al., (C. C. A.)* 221 *F.* 841.

There is nothing in *Pierce v. National Bank of Commerce, (C. C. A.)* 268 *F.* 487, cited by the defendant as a leading authority, at odds with what has been said in the foregoing, for in that case Judge Sanborn recognized that in order for an issue, question or matter to be concluded

by a former judgment, in a subsequent suit upon a different cause of action, it must have been not only actually but necessarily litigated and determined in the former action.

It is not necessary that the facts concluded by the judgment should be revealed on the face of the judgment itself, as the quotation, *supra*, from the *Duchess of Kingston's Case* might lead one to infer. *Williams v. Daisey, supra.* Where the facts on which the judgment rests are revealed on the face of the record of the former judgment, there is of course no occasion to look further for the factual basis of the decision. If there is no disclosure of this character on the face of the judgment, then recourse may be had to the formal pleadings in the case, to issues framed by the court or by stipulation of the parties, or to special verdicts on questions submitted to the jury, in order to ascertain the precise controversies of fact that were heard and determined as the necessary supporting foundation of the judgment. *Bower on Res Judicata,* § 174. Where the form of the issue in the prior proceedings was so vague as not to show the questions of fact submitted to the jury, it is competent to prove by parol testimony what question or questions of fact were thus submitted and necessarily passed upon by them. *Williams v. Daisey, supra; Miles v. Caldwell,* 2 *Wall.* 35, 17 *L. Ed.* 755; *Bower, Res Judicata,* § 175. It is proper therefore in this case to consult not only the pleadings and decree, but as well the record of the testimony in the former cause, all of which are made a part of the plea, in order to ascertain the scope of the estoppel now claimed for the former decree.

It is now in order to examine the facts with the view of ascertaining whether the complainant is estopped by the former decree to assert the existence of the partnership. Reference to the report in 19 *Del. Ch.* 347, 349, 167 *A.* 842, will disclose the nature of the former cause and the evidence which the parties introduced in sustaining their respective sides of the issue.

The bill in that cause made no allegations concerning the existence of a partnership. In the opinion which is reported, it is stated, 19 *Del. Ch.* 347, at *page* 349, 167 *A.* 842, 843, that "the complainant insists that the defendant is not and never was a partner of his." This is true. But it should be understood that this insistence was not made in the bill filed by the complainant in the former cause, the defendant here. The complainant's insistence in this respect arose in the course of taking testimony and in the argument thereon before the court.

The bill charged that an instrument under seal purporting in terms to grant a one-half interest in the present defendant's business to the present complainant, though executed by the parties, was never delivered and never intended to be effective except upon the condition that the defendant should die while absent in Florida. The bill charged that the defendant in that suit, the complainant here, in substance purloined the instrument, and the sole prayer for relief was that the instrument should be decreed to be fraudulent and void and delivered up for cancellation. The present complainant in answering that bill averred that he was a partner with the defendant and that the instrument had been given effect by delivery.

This being the state of the pleadings, it was expressly stated in the opinion that the case did not call for a decree formally declaring either the existence or nonexistence of the partnership. The issue was a narrow one, *viz.*, did the instrument come into the possession of the defendant by delivery, or was his possession of it acquired by a fraudulent abstraction from the box of the complainant contrary to his consent.

A reading of the opinion will show how the question of the existence of the partnership crept into the case. I quote therefrom as follows:

"So that it becomes necessary, in view of the contentions, to examine the evidence further with the view of discovering whether

or not the paper had been delivered to the defendant so as to make it his document evidencing what he claims are his partnership rights.

"Now the evidence upon that phase of the case is at some points highly conflicting. It follows two main lines, *viz.*, (a) the circumstances attending its preparation in the conveyancer's office, and (b) whether or not the complainant and the defendant were partners during the years from 1926 to 1932, for it appears to be thought by the parties that the existence or non-existence of the alleged partnership during those years preceding the instrument's date, is an important fact to be established. If the partnership did exist, as contended by the defendant, it is argued that the likelihood of delivery is confirmed; and on the other hand, if the partnership did not exist, as is contended by the complainant, it is argued that non-delivery is corroborated. Thus, the issue of the prior existence of the alleged partnership has been drawn into the case and much testimony has been taken as bearing thereon. Upon this issue the burden lies upon the defendant who sets up the affirmative side of it. *Robinson v. Green's Adm'r.*, 5 *Har.* 115."

It thus appears that the question of the existence or non-existence of the partnership arose *arguendo* in a purely collateral manner. The question actually litigated and determined was the alleged invalidity of the instrument sought to be cancelled, an invalidity that was due to the absence of its delivery. Questions of controverted fact that had a logical relevancy to that issue, though heard and determined, nevertheless did not pass *in rem judicatam*.

The references herein made to the opinion filed in the other cause are made in the interest of avoiding a repetition of what, but for such reference, would require to be set out more at length. They are not made with the thought that the scope of the estoppel of a former judgment may be gathered from the opinion of the court rendering it. While according to some authorities such reference is permissible, yet according to others as a general proposition it is not. *Doyle v. Hamilton Fish Corporation*, ( *C. C. A.*) 234 *F.* 47; *Bower, Res Judicata*, § 173. It is to be observed that the decree in the former cause contains no reference either to the existence or non-existence of the partnership.

It does not purport to adjudicate that issue. All that was decreed was that the instrument was void and should be cancelled.

The issue in the former cause was such that whether a partnership existed or not, was not necessary to be determined before a decree could be entered. The instrument did not purport to recognize a theretofore existing partnership, which is the issue here. On its face it purported to be a present grant. But suppose, at the time the bill was filed in the other cause, the parties had been in fact partners since 1926 as is now and was on the other occasion claimed, can it be successfully contended that that fact would have validated the undelivered instrument and entitled the purloiner of it to keep it? That the answer to this question must be in the negative, seems to me to admit of no debate. If so, how, then, can it be said that the existence or non-existence of the partnership was a fact so "cardinal to the decision," using the language of the Queen's Bench in *Reg. v. Hartington Middle Quarter, supra,* that the decree necessarily imports its adjudication? Borrowing the phraseology of some of the other cases cited *supra,* how could it be said to have been "directly involved in the issue and not to any incidental or collateral matter," or that it "had, of necessity, to be determined before the judgment could have been rendered," or that its decision was a "necessary step or groundwork" upon which the former judgment was "founded"? The only fact necessary to be determined in the former cause as a support for the decree was that the instrument there in question had not been delivered.

The most that can be said with respect to the question of whether there was a partnership is, that it presented a collateral issue which the Chancellor was called upon to decide for its argumentative aid, whatever that was worth, in determining the primary fact of delivery of the instrument and its consequent validity, which latter fact it was necessary and essential to determine as the real issue in

the cause. That the decree entered in the former cause does not rest upon the fact of the existence of the partnership would seem to be manifest from this consideration, *viz.,* that even if the partnership was in existence, it would not follow as a necessary consequence that the instrument sought to be cancelled had been validated by delivery.

The case of *People ex rel. Reilly v. Johnson, et al.,* 38 *N. Y.* 63, 97 *Am. Dec.* 770, presents a fact situation that approaches the instant one in substantial analogy. There the action was by the alleged landlords of Reilly to dispossess him as a holding over tenant. Reilly denied that he was a tenant. It was contended against him that he was estopped to deny the tenancy by the judgment in a former suit in which he had alleged that the deed held by the alleged landlords was in fact only a mortgage to secure the repayment of a loan, and in which he prayed for a reconveyance to him on his payment of the money for which he averred the deed had been given as security. The alleged landlords, as defendants in the former suit, answered by denying that the deed was in fact a mortgage and by affirmatively averring a tenancy to exist between them as landlords and Reilly as tenant. The alleged tenancy was explicitly found by the judge on the former trial to exist. But as the issue of the tenancy, *vel non,* was held by the court in the cited case to have been a "mere incidental or collateral issue," the main and vital controversy between the parties being whether the deed was an equitable mortgage, it was adjudged that the finding of the trial judge that the tenancy did exist was not essential to his determination of the case and, therefore, the former judgment was not conclusive of the question. The court said: "Although a decree in express terms professes to affirm a particular fact, yet, if such fact was immaterial, and the controversy did not turn upon it, the decree will not conclude the parties in reference to that fact." I suppose the word "immaterial" was used by the court in the sense of not being necessary for a decision, for it would

seem clear that the question of whether the parties had treated themselves as standing in the relation of landlord and tenant was relevant to the question in issue of whether the deed under which the alleged landlords held title was only a mortgage. In the cited case there thus appears to be exemplified such a situation as the case *sub judice* presents, *viz.*, a situation where, in the course of hearing a controversy, an issue is raised touching a fact which is thought to have a logical relevancy upon whether the main fact in issue did or did not exist. An issue of that incidental character, while it may call for consideration and an answer by the court and may play more or less of a part in the process of the court's reasoning in arriving at a decision, yet is collateral to the issue which the judgment is to resolve, and does not pass *in rem judicatam.* The Supreme Court of Minnesota in *Marvin v. Dutcher,* 26 *Minn.* 391, 403, 4 *N. W.* 685, 689, in substance declared this to be the law when it said: "every essential fact necessary to uphold the judgment will be deemed to have been directly embraced within the issue. Facts, however, not thus essential and necessary, but which are only indirectly involved *as matter of evidence bearing upon the precise point in controversy for adjudication,* do not fall within the rule, and as to them the doctrine of *res adjudicata* has no application." (Italics supplied.)

The principle of estoppel is a salutary one. By giving rest and repose to controversies it relieves parties as well as courts from the vexatious renewal of litigation. In the instant case, I should very much like the court to be quit of this controversy. But as its decision was not, in my opinion, necessarily involved in the former cause, an order must be entered overruling the plea. What has been said herein is of course applicable to the type of case in hand, *viz.*, a case where the estoppel is sought to be applied in a suit where the cause of action is not the same as that which was adjudged in the former suit; for where the two causes of action are the same the application of the principle of

estoppel is broader than where the two causes of action are different.

Let an order be prepared accordingly.