THE EQUITY CORPORATION, a corporation of the State of Delaware,

*vs.*

WALLACE GROVES.

*New Castle, June 3, 1947.*

*Clarence A. Southerland,* of Southerland, Berl & Potter (*William C. Scott,* of New York City, of counsel), for complainant.

*Robert H. Richards, Jr.*, of Richards, Layton & Finger (*F. W. H. Adams*, of Dorsey & Adams, and *Abraham Geller*, all of New York City, of counsel), for defendant.

HARRINGTON, Chancellor: The Equity Corporation, the complainant, an investment corporation, was organized in 1932, and in 1935 Interstate Equities Corporation and Chain & General Equities, Inc. (both Delaware corporations), hereinafter respectively referred to as "Interstate" and "Chain & General", also investment companies, merged with the complainant, which succeeded to all of their property rights and franchises. This action is being prosecuted by The Equity Corporation, the complainant, as the successor to those two corporations.

The bill alleges that in September of 1931 Wallace Groves, the defendant, as part of a plan and scheme to defraud Interstate and Chain & General, and wrongfully to use the moneys of said corporations to purchase and acquire for himself control of a chain of investment companies, contracted with Chain & General to underwrite a controlling interest in its stock (500,000) shares; the defendant's sole object being to obtain voting control. After thus securing the power to dominate and control Chain & General, and as the next step in his scheme Groves immediately contracted to purchase from Bancamerica Blair Corporation and an individual named Marston 642,517 shares of the common stock of Interstate, at a price of $1.50 a share, or a total consideration of $963,775.50. The acquisition of this stock gave Groves control of Interstate and its board of directors. It is alleged that the price paid for the stock was far greater than its book or asset value or its market value, and the defendant agreed to pay said price solely because of the plan and scheme under which he intended to resell said stock to Chain & General at a large profit to himself as soon as he could put his nominees in control of Chain & General's board of directors. It appears that he was able to do this between September 23rd and November 4, 1931.

On November 4, 1931, Groves, being in complete and undisputed control of both Interstate and Chain & General and a director thereof, caused Interstate to advance him the money to take down the Chain & General stock which he had underwritten (467,938 shares, amounting to more than 50%), and immediately elected his nominees to a large majority of seats on Chain & General's board; Groves had already become a member. On the same day Groves caused Chain & General to purchase from him his recently acquired Interstate stock (642,517 shares) at a profit to himself of some $361,258.50. The bill alleges that the price which Chain & General paid Groves for this Interstate stock was grossly excessive, was far more than the book, asset or market value thereof, and constituted a fraud upon Chain & General and its stockholders. Thus, in a little more than a month's time, and without the expenditure of any of his own funds, Wallace Groves, the defendant, in flagrant breach of his fiduciary duty, obtained in the form of a profit approximately $361,000 of Chain & General's funds, having been able to obtain control of Chain & General by means of an improper loan of $1,000,000 from Interstate. Groves, having in this way financed himself, immediately took the funds thus obtained from Chain & General and invested them, or the greater part of them, in the stock of a third investment company, Yosemite Holding Corporation, hereinafter called "Yosemite", taking title to the Yosemite stock, either in his own name, or in the names of his nominees. The defendant, with certain other persons, shortly thereafter organized The Equity Corporation, the complainant, and thereupon exchanged his Yosemite stock, or a large part of it, for stock of the complainant, also taking title to that stock either in his own name or in the name of nominees. The effect of these transactions was to build up a pyramid of investment companies with the ownership of the stock of The Equity Corporation, the complainant and the top company, vested in Groves. All of this was accomplished by the improper loan of Interstate funds, whereby Groves obtained control of Chain & General, and

by the use of Chain & General's funds, illegally obtained in the form of profits in the sale to it of the defendant's Interstate stock. As a final step, in May of 1933, Groves sold his stock in The Equity Corporation, or a large portion of it, thereby realizing further substantial profits.

The bill then alleges that all of the acts of the defendant heretofore described, constituted a part of a plan and scheme on his part to defraud Interstate and Chain & General, and to use their money which he had illegally and fraudulently obtained to purchase or acquire for himself control of various investment companies, and to make large illegal and secret profits by the improper use of the moneys of said corporation, and at their expense, all in violation of his fiduciary duty to said corporations and their stockholders, and in oppression of said corporations.

It is further alleged that Groves remained in absolute control of these corporations until May or June of 1933; that The Equity Corporation did not learn of the fraud committed by the defendant and of the illegal profits made by him until testimony was adduced before the Securities & Exchange Commission pursuant to its study of investment trusts and investment companies commenced in 1936 and continued for some months thereafter; that in or about December of 1937, The Equity Corporation commenced an action against Wallace Groves in the New York County Supreme Court, which action was dismissed in January of 1945 on the sole ground that it was barred by the New York statute of limitations.

The final paragraph of the bill alleges that Wallace Groves is not now and has never been domiciled in, or a resident of, Delaware; nor has he ever been within the State of Delaware during the past fourteen years except to pass through it enroute to other points.

An accounting and a decree for the payment to the complainant of any moneys found to be due, with interest, were prayed for.

The defendant's plea of *res judicata* was based on a decree dismissing the complainant's bill in a prior action between the same parties, for the same demands in New York. See *Equity Corporation v. Groves, 294 N.Y. 8, 60 N.E.2d* 19. But the exhibits attached show that the action was dismissed because the New York statute of limitations applied. The decree, therefore, did not determine the case on its merits. See *Hughes v. United States, 4 Wall.* 232, 71 *U.S.* 232, 18 *L.Ed.* 303; *Jefferson v. Stuckert, et al.,* 12 *Del. Ch.* 34, 103 *A.* 870; *Restatement Conflict of Laws,* § 537. As a general rule, the statute of limitations merely affects the complainant's remedy in the State in which the suit is brought, and not the right of the matter involved in the action. See *Waples v. McGee, 2 Har.* 444; *Burton v. Waples, 3 Har.* 75; *Townsend v. Jemison, 9 How.* 407, 48 *U.S.* 407, 13 *L.Ed.* 194; *Lord Proprietary of Md. v. Styer,* 1 *Del.Cas.* 388. Ordinarily a judgment entered against a complainant in one State on that ground, therefore, does not affect its right of action on the same demand against the same defendant in another State. *Campbell v. Holt,* 115 *U. S.* 620, 6 *S.Ct.* 209, 29 *L.Ed.* 483; *Brent v. Bank of Washington, 10 Pet.* 596, 35 *U.S.* 596, 9 *L.Ed.* 547; *Warner v. Buffalo Drydock Co.,* (2 *Cir.*) 67 *F.2d* 540 (*certiorari* denied 291 *U.S.* 678, 54 *S.Ct.* 529, 78 *L.Ed.* 1066); *Restat. Judgments,* § 49. The same rule was applied in England when a prior action in the Isle of Man had been dismissed because the Manx Statute of Limitations barred the remedy. *Harris v. Quine,* (1869) 4 *Q.B.* 652.

The full faith and credit clause of the *Federal Constitution,* § 1, *Art.* IV, does not affect this conclusion. It was only intended to regulate the effect of the acknowledged jurisdiction of the States over persons and things within their territory, and conferred no new powers on them. *State of Wisconsin v. Pelican Ins. Co.,* 127 *U.S.* 265, 8 *S.Ct.* 1370, 32 *L.Ed.* 239; *Cole v. Cunningham,* 133 *U.S.* 107, 10 *S.Ct.* 269, 33 *L.Ed.* 538; *McElmoyle v. Cohen,* 13 *Pet.* 312, 38 *U.S.* 312, 10 *L.Ed.* 177. It did not make the judgments of one State domestic judgments to all intents and

purposes in other States, but only gave them a general validity faith and credit as evidence of the matters actually adjudged and determined. *Id.* To be conclusive of the rights of the parties, the prior judgment in another State must, therefore, have been on the merits of the case. *McElmoyle v. Cohen, supra;* see also *Swift v. McPherson,* 232 *U.S.* 51, 34 *S.Ct.* 239, 58 *L.Ed.* 499; *State of Wisconsin v. Pelican Ins. Co., supra; Fall v. Eastin,* 215 *U.S.* 1, 30 *S.Ct.* 3, 54 *L.Ed.* 65, 23 *L.R.A.(N.S.)*, 924.

The Equity Corporation concedes that no subsequent action for the same demand could be brought by it in the State of New York (*Widdows v. Keaton, (D.C.),* 44 *F.2d* 839; *Freeman on Judgments, (5th Ed.)* § 1397; *Restatement Judgments,* 49) ; but that is not the question here.

The cases involving the statute of limitations relied on by Groves in support of his plea of *res judicata* (*Sweet v. Brackley,* 53 *Me.* 346; *Weeks v. Harriman,* 65 *N.H.* 91, 18 *A.* 87, 4 *L.R.A.* 744, 23 *Am.St.Rep.* 21, and *Fulton Iron Works v. Riggin,* 14 *Mo.App.* 321) do not represent the majority or logical rule.

In *Warner v. Buffalo Drydock Company, supra* [67 *F.2d* 543], Judge Augustus N. Hand pointed out:

"All the foreign court adjudicates as a fact is that the action has been brought after the expiration of the statutory period, and, as a matter of law, that the remedy is barred in that court."

In *United States v. Oregon Lumber Company,* 260 *U.S.* 290, 43 *S.Ct.* 100, 67 *L.Ed.* 261, cited by the defendant, the prior judgment based on the statute of limitations was in an action for the recovery of specific property alleged to have been procured by the defendant's fraud, and hence involved legal rights, and not merely remedies. Such cases come within an exception to the general rule applicable to statutes of limitations. *Warner v. Buffalo Drydock Co., supra; Campbell v. Holt, supra.*

Moreover, the *Oregon Lumber Company* case was de-

cided on the ground that the complainant had selected an inconsistent remedy and had prosecuted it to judgment in the prior action; *res judicata* was not directly involved. See *Freeman on Judgs.*, (*5th Ed.*), ] 696, *p.* 1473.

In the New York action, The Equity Corporation, by an almost identical bill, sought to recover from Groves the alleged illegal profits arising from the original transaction in 1931, as well as the profits arising from their subsequent use in 1933. Groves claims, however, that in any event the decree entered by the New York court dismissing the complainant's bill, necessarily determined as a matter of law that it had no right of action on its second demand, and to that extent the plea of *res judicata* is a good defense to the present action. See *Equity Corporation v. Groves, supra.*

The complainant does not deny that a general plea to the whole action, though bad in part, is not necessarily bad in its entirety. See 1 *Daniell's Ch. Pl. & Pr.* (*6th Ed.*), *\*pp.* 610, 611; *Story's Eq. Pl.*, ] 692; *West v. Sirian Lamp Co.*, 28 Del. Ch. 90, 37 *A.* 2d 835.

Whether the question be one of law or fact, if it has once been determined on its merits by a court of competent jurisdiction in an action between the same parties, that determination is final. *Venetsanos v. Pappas*, 21 *Del.Ch.* 177, 184 *A.* 489; *Williams v. Daisey*, 7 *W. W. Harr.* (37 *Del.*) 161, 180 *A.* 908; *Freeman on Judgs.*, (*5th Ed.*), § 708. That is true under a plea of *res judicata,* even though the causes of action are not precisely the same. *Id.* The defense is usually and more properly set up by plea, though it may be relied on in an answer. *Sill vs. Kentucky Coal & Timber Devel. Co.*, 11 *Del. Ch.* 93, 97 *A.* 617. Furthermore, that defense applies to such questions of law and issues of fact as were not only expressly determined by the judgment or decree entered in a prior action for the same demand between the same parties, but also to such other matters of law or fact as were necessarily determined thereby because essential to the validity of the judgment or decree entered. *Venetsanos v. Pappas, supra; Williams*

*v. Daisey, supra; Rex v. Inhabitants of Hartington, etc.,* (Cockburn, C. J.) 4 *E. & B.* 780; *Warner v. Buffalo Drydock Co., supra; North Carolina R. Co. v. Story,* 268 *U.S.* 288, 45 *S.Ct.* 531, 69 *L.Ed.* 959; *Bowers, Res Judicata,* § 162; see also *Warrick v. Missouri-Kansas Pipe Line Co.,* 25 *Del.Ch.* 171, 15 *A.2d* 298. If the determination of a question is not actually necessary to sustain the prior judgment or order, it is, however, regarded as a mere collateral or incidental matter, and will not sustain a plea of *res judicata. Venetsanos v. Pappas, supra; Williams v. Daisey, supra; Bowers, Res.Jud.,* § 162; *Freeman, Judgs.,* (*5th Ed.*), § 691. Freeman, in the latter section, points out:

"* * * generally speaking, no judgment or decree is evidence in relation to any matter which came collaterally in question, nor to any matter incidentally cognizable, or to be inferred from the judgment only by argument or construction. Certainty as to the precise matters adjudicated is of the essence of the estoppel which cannot be created by mere argument."

The question is whether the defendant's plea comes within these principles.

In addition to the usual allegation with respect to the jurisdiction of the New York court, the plea alleges that opinions were filed by both the Appellate Division of the Supreme Court and by the Court of Appeals dismissing the complainant's bill on the defendant's motion, and that orders were entered in conformity therewith. Exhibits attached to the plea included (1) a copy of the order of the Appellate Division of the Supreme Court of New York which, after reciting that the court had filed a memorandum holding that the six-year statute of limitations was applicable "to the cause of action alleged in the amended complaint," stated "it is Ordered that the motion of the defendant praying for an order dismissing the amended complaint herein, pursuant to Rule 107 of the Rules of Civil Practice on the ground that the cause of action alleged therein did not accrue within the time limited by law for the commencement of the action thereon, be and the same

hereby is granted in all respects, and that said amended complaint be and the same hereby is dismissed"; and (2) a copy of the complainant's notice to the defendant's solicitors of an appeal to the Appellate Division of the New York Supreme Court from an order entered by the trial court dismissing the complainant's amended bill on the same ground. It likewise appears that The Equity Corporation, the complainant, appealed from the order entered by the New York Supreme Court to the Court of Appeals and that the order entered by the lower court was affirmed and the proceedings remitted to the Supreme Court to be proceeded with according to law. The defendant also attached to his plea a copy of the complainant's amended bill, and copies of the opinions of the New York courts and of the affidavits filed in the New York Supreme Court, both supporting and opposing his motion to dismiss the bill.

The order of the New York court dismissing the complainant's bill on the defendant's motion was phrased in clear and specific language and needs no explanation. *Freeman on Judgs.*, (*5th Ed.*), §§ 691, 772. Nor can it be said that the court's entire opinion was incorporated in the order because of the recital with respect to the conclusion that the six-year statute of limitations applied. The fact that the particular question relied on was not an issue raised by the pleadings is immaterial if its determination in a particular way was a necessary premise to the judgment. *Freeman on Judgs., supra*, § 693.

"It is allowable to reason back from a judgment to the basis on which it stands, upon the obvious principle that, where a conclusion is indisputable, and could have been drawn only from certain premises, the premises are equally conclusive and indisputable with the conclusion. But such an inference must be inevitable, or it cannot be drawn." *Id.*

When the order entered does not show on its face that the particular question of law or fact relied on in the plea of *res judicata* was determined by the court, the pleadings and other pertinent record proceedings, if any, may be examined to aid in determining what was necessarily de-

cided. *Bowers, Res Judicata,* §§ 162, 173; 35 *C.J.* 502, 503; see also *Freeman on Judgs.,* § 771. In England, the opinions of the court in the prior proceeding will not ordinarily be examined for that purpose. *Bowers, Res. Jud., supra,* § 173; *Rex v. Governor of Brixton Prison,* (1910) 2 *K.B.* 1056. This is largely because of the usual practice for each of the several judges sitting in a case to write an opinion. But even in that country, there seem to be some limitations on the general rule and the opinions in the prior judicial proceedings may be examined to show, at least, what might have been decided by the order or judgment in controversy. *Bowers, Res Jud.,* § 173. In cases of uncertainty where necessary inferences from prior decrees are relied on, some American courts permit an examination of the opinions, as well as of the pleadings, and record proceedings to aid in determining that question, and that seems to be a reasonable rule. *Freeman on Judgs.,* § 772; 33 *C.J., Judgments,* 1105; see also 49 *C.J.S., Judgments,* § 27; *Grief v. Teas,* 156 *Md.* 284.

In determining whether to dismiss the complainant's amended bill on the defendant's motion, because the statute of limitations applied, the New York courts considered whether the allegations with respect to subsequent profits made by Groves, took the case out of the six-year statute and brought it within the ten-year statute; the latter was said to be the pertinent provision if ground for equitable relief was alleged. The affidavits filed in connection with the motion and attached to the defendant's plea in this case refer to the same question. On the one hand, the affidavit of Groves reflects his contention that the only real cause of action alleged was for the recovery of an over-payment made to him by the plaintiff, which was essentially a legal demand, and therefore, came within the six-year statute. While on the other hand, the reply affidavit discloses the complainant's claim that its alleged right to recover subsequent profits was exclusively of an equitable nature, and that the ten-year statute, therefore, applied. The court held that the six-year statute was applicable, and accord-

ingly entered an order dismissing the bill. In discussing the question, the majority opinion in the Court of Appeals stated that the allegations, with respect to profits made by Groves from prior illegal gains did not state a cause of action in equity against the defendant, and, therefore, did not bring the case within the ten-year statute. *Equity Corp. v. Groves,* 294 *N.Y.* 8. But the real question was whether the New York statute of limitations applied, and the sufficiency of the bill was not directly in controversy. It, therefore, seems that the reasoning of the New York court in reaching its conclusion was a mere collateral or incidental statement with respect to a matter, the decision of which was not such an essential step to the validity of the specific order entered dismissing the bill as to constitute, in effect, an integral part of it. See *Mullaney v. Mullaney,* 65 *N.J.Eq.,* 384, 54 *A.* 1086; *Homer v. Brown,* 16 *How.* 354, 14 *L.Ed.* 970; *Burlen v. Shannon,* 99 *Mass.* 200, 96 *Am.Dec.* 733; *Bleakley, v. Barclay,* 75 *Kans.* 462, 89 *P.* 906, 10 *L.R.A.(N.S.)* 230; *Bowers, Res Jud.,* §§162, 163; *Freeman on Judgs.,* §§ 692, 693.

*Angel v. Bullington* 67 *S.Ct.* 657, does not sustain the defendant's contention that the application of the statute of limitations made it necessary for the New York court to determine the merits of the claim for subsequent profits. That case merely involved the question whether the judgment of the North Carolina state courts that a North Carolina statute barred recovery of a deficiency judgment, with respect to a Virginia deed of trust, was *res judicata* in a subsequent action in a United States' District Court in North Carolina. The court construed the North Carolina statute prohibiting deficiency judgments as a matter of substantive law for purposes of *Erie Railway Company v. Tompkins,* 304 *U.S.* 64, 58 *S.Ct.* 817, 82 *L.Ed.* 1188, 114 *A.L.R.* 1487, and stated that Federal District Courts would be bound thereby. Apparently, it proceeded on the principle that for purposes of diversity jurisdiction, a Federal court is merely another court of the State. Furthermore, the majority opinion stated that "for purposes of *res judi-*

*cata,* the significance of what a court says it decides is controlled by the issues that were open for decision."

No other cases cited by the defendant need be examined.

My conclusion is that the defendant's plea of *res judicata* is insufficient in law in its entirety.[1]

An order will be entered accordingly.

[1] *R. Sherrard Elliott, Jr., as Receiver of Yosemite Holding Corporation v. Wallace Graves,* also pending in this court, involves precisely the same principles. The plea of *res judicata* in that case is, therefore, insufficient in law and an order to that effect will likewise be entered.