**Mary Johns McELROY, Plaintiff,**

v.

**Alan G. McELROY, Defendant.**

Court of Chancery of Delaware.
New Castle.
Aug. 6, 1969.

Thomas Herlihy, III, of Herlihy & Herlihy, Wilmington, for plaintiff.

Thomas H. Wingate, Wilmington, for defendant.

DUFFY, Chancellor:

This is an action by Mary Johns McElroy against Alan G. McElroy, from whom she received a bed and board divorce in Pennsylvania on October 13, 1966. The parties were married in 1955 and are the parents of two children, ages 13 and 10. Under an order of the Family Court (in New Castle County, Delaware), Mr. McElroy is paying $250 a month for support of the children. In this action Mrs. McElroy seeks an order specifically enforcing an award of permanent alimony by the Court of Common Pleas of Allegheny County, Pennsylvania, or, alternatively, an order of separate maintenance.

A.

If a plaintiff has sufficient remedy at law this Court does not have jurisdiction of the matter. 10 Del.C. § 342. The Court therefore raised *sua sponte* its jurisdiction in an action by one "spouse" against another following the entry of a decree of divorce *a mensa et thoro*.

In Delaware it is well established that one spouse may not sue another at law. Short Line, Inc. of Penn. v. Perez, Storey, 238 A.2d 341 (1968); Plotkin v. Plotkin, 2 W.W.Harr. 455, 125 A. 455 (Super.Ct., 1924). I find nothing in the Married Women's Act, 13 Del.C. §§ 311–314, to change this disability following a divorce *a mensa*. And no Delaware decision has been called to my attention which would be helpful in deciding the question. Hence I apply the common law rule, which is that a woman living apart from her husband under such a decree may not maintain an action at law against him. In short, that decree does not remove the common law disability of one spouse to sue another. 27 Am.Jur., Husband and Wife, § 584. Such a decree does not affect the status of marriage (for present purposes); it merely justifies the separation. Drum v. Drum, 69 N.J.L. 557, 55 A. 86 (1903). See the discussion of a decree *a mensa* and its ecclesiastical origins in Pettis v. Pettis, 91 Conn. 608, 101 A. 13, 4 A.L.R. 852 (1917). After a review of cases from a number of jurisdictions the Connecticut Court there concluded that "the reported cases seem to agree that a decree of separation does not affect the marital status." To the same effect, see 2 Schouler, Marriage, Divorce, Separation and Domestic Relations, § 1938 (6th ed.).

I conclude that Mrs. McElroy does not have a remedy at law against Mr. McElroy and for that reason this Court has jurisdiction of the action.

## B.

On September 19, 1967 the Court of Common Pleas in Pennsylvania entered an order which states that it is

"ordered, adjudged and decreed that the Defendant, Alan G. McElroy, be and he is hereby ordered to pay unto the Plaintiff, Mary Johns McElroy the sum of Three Hundred ($300.00) Dollars per month as permanent alimony and the Defendant is further ordered to pay to William C. Hurtt, Esquire, the additional sum of Five Hundred ($500.00) Dollars for counsel fees and expenses."

The same court filed an amended order on August 12, 1968 reciting certain of the proceedings in the case and then decreeing that the order of September 19, 1967 was "amended" as follows:

"After full hearing on the matter of permanent alimony, at which hearing both Plaintiff and Defendant and their respective counsel were present on November 10, 1966, and on motion of William C. Hurtt, Esquire, attorney for Plaintiff, it is hereby ordered, adjudged and decreed that effective September 19, 1967, the Defendant, Alan G. McElroy, be and he is hereby ordered to pay unto Plaintiff, Mary Johns McElroy, the sum of Three Hundred ($300.00) Dollars per month as permanent alimony and the Defendant is further ordered to pay to William C. Hurtt, Esquire the additional sum of Five Hundred ($500.00) Dollars for counsel fees and expenses."

Mr. McElroy relies on certain docket entries in the Pennsylvania proceeding, including the following:

"June 6, 1967, it is ordered that the hearing on payment [sic] alimony and counsel fees which was continued from November 2, 1966 is ordered set down for further hearing on June 16, 1967 at 10:00 A.M. and Defendant is ordered to be prepared to testify regarding his income and is ordered to bring with him evidence relating to all sources of income. Sept. 19, 1967, upon motion, it is ordered that defendant pay unto plaintiff the sum of $300.00 per month, as permanent alimony."

It is undisputed that Mrs. McElroy has not received any payments under the Pennsylvania orders (she has received about $160 in temporary support under an order of this Court) and she contends that in addition to a decree of specific performance she is entitled to a judgment for arrearages totaling $4,040.

Mr. McElroy argues that the Common Pleas docket entries show that a hearing on permanent alimony had not been held prior to June 6, 1967, the issue was set down for hearing on June 16 and it was not held on that date or at any time thereafter. For this reason, he seems to argue, the Pennsylvania Court did not have jurisdiction over him and its order should, therefore, not be enforced here.

## C.

Under Article 4, Section 1 of the Federal Constitution, a judgment of another state properly authenticated shall be given full faith and credit in this State to the same extent as given in the state in which it was entered. Guayaquil & Quito Ry. Co. v. Suydam Holding Corp., 11 Terry 424, 132 A.2d 60 (Sup.Ct.1957). And the full faith and credit clause applies with equal force to decrees in equity as well as judgment at law. 50 C.J.S. Judgments § 889. To be enforceable here, under full faith and credit, the court which gave the judgment must have had jurisdiction of the subject matter of the suit and jurisdiction over defendant. That is basic to an action on a foreign decree.

On its face the order of August 12, 1968 shows that the Court took jurisdiction of the question of permanent alimony, and defendant has made no showing whatsoever that the Common Pleas Court does not have jurisdiction of that subject in Pennsylvania. And as to personam jurisdiction, the docket entries which defendant put into evidence

show that he was served "personally with complaint, by the Sheriff of Montgomery County" and, furthermore, that he appeared in the proceeding. This record thus does more than create a presumption of jurisdiction, Holland v. Universal Life Co., 7 W.W.Harr. 39, 180 A. 328 (Super.Ct., 1935); it establishes it beyond doubt.

Defendant next argues that the Pennsylvania judgment was only preliminary because the docket entries show that a final hearing was never held. To be conclusive of the rights of the parties the prior judgment must have been on the merits of the case. Equity Corporation v. Groves, 30 Del.Ch. 68, 53 A.2d 505 (Ch.1947). It seems perfectly plain from the order of August 12, 1968 that it was an adjudication on the merits of Mrs. McElroy's right to permanent alimony, within the requirements of *Equity Corporation.* As to defendant's evidence (including his affidavit) that the hearing on November 2, 1966 was for temporary alimony only, this is belied by both the docket entries, the order of August 12, 1968, and Mrs. McElroy's testimony at the hearing. The transcript of that proceeding was not available to this Court, but her testimony here was that the hearing in the Court of Common Pleas was for permanent alimony. A reasonable inference from the record is that the Pennsylvania Court gave Mr. McElroy an opportunity "for further hearing" on the alimony question but he did not take advantage of it and indeed probably remained, purposefully, out of the jurisdiction.* This, however, did not deprive the Court of jurisdiction (a) personally over him and (b) to enter an award of permanent alimony following a hearing previously held for that purpose.

It follows that Mrs. McElroy is entitled to a judgment based upon the Pennsylvania decree. Accordingly, a money judgment will be entered in her favor in the amount of the arrearages, with credit for amounts she has received as temporary maintenance under the order of this Court.

### D.

I next consider Mrs. McElroy's application for an order by this Court based upon the Pennsylvania decree directing that Mr. McElroy pay her "Three Hundred ($300.00) Dollars per month as permanent alimony." The full faith and credit clause of the Federal constitution does not require a Delaware court to enforce an order of another state for future payments of alimony. Sistare v. Sistare, 218 U.S. 1, 30 S.Ct. 682, 54 L.Ed. 905 (1909). But we may do so as a matter of comity. McCabe v. McCabe, 210 Md. 308, 123 A.2d 447 (1956); McKeel v. McKeel, 185 Va. 108, 37 S.E.2d 746 (1946); Cousineau v. Cousineau, 155 Or. 184, 63 P.2d 897, 109 A.L.R. 643 (1936); Biewend v. Biewend, 17 Cal.2d 108, 109 P.2d 701, 132 A.L.R. 1264 (1941); Harrison v. Harrison, 214 F.2d 571 (4 Cir. 1954). Anno: 132 A.L.R. 1272 and 18 A.L.R.2d 873.

Defendant argues that the recent ruling by Vice Chancellor Short in Potter v. Potter, Del.Ch., 251 A.2d 578 (1968) holds that this Court does not have jurisdiction to grant specific performance of a foreign decree "insofar as future payments of alimony and support thereunder are concerned." The situation before the Court in that case was fundamentally different from that involving the McElroys. In *Potter* a husband and wife had received an absolute divorce in Virginia. There was, therefore, an adequate remedy at law for arrearages and, as to future payments specified in the Virginia decree, plaintiff was able to proceed under the Uniform Reciprocal Enforcement of Support Act. And an application for specific performance was the only basis of jurisdiction argued to the Court. As to that the Vice Chancellor pointed out that specific performance has a limited function

---

* The order of August 12, 1968 recites:

  "Whereas, this Court was informed by Defendant's counsel that Defendant could not return to Allegheny County because of a bench warrant for his arrest * * *."

under the Delaware cases and he went on to say that "Under the circumstances I decline to exercise discretion in her [plaintiff's] favor."

■ This case differs from *Potter* because an independent basis for equity jurisdiction has been established; as I have already determined, Mrs. McElroy does not have a remedy at law—she cannot sue defendant there. Hence, the case will remain here in any event and a judgment for arrearages will be entered. The only question then remaining relates to future payments and that is a matter of discretion with the Court.

On the basis of comity and to avoid a multiplicity of separate applications to this Court, it is my view that the order of Pennsylvania should be enforced, under the special circumstances of this case. The remedies in both states appear to be similar and there is no local policy objection precluding a decree.

■ Defendant also opposes the entry of a decree for future payments on the ground of hardship because he says that he cannot pay more than he is now paying. I do not regard that as relevant to the present issues. Hardship may be raised in a contempt proceeding if one is begun, compare Dumel v. Dumel, 42 Del.Ch. 465, 213 A.2d 859 (1965), or in a petition to modify the decree to be entered.

Order on notice.